380 S.E.2d 209

**The DAILY GAZETTE COMPANY, INC.**

v.

**Michael E. CARYL, State
Tax Commissioner.**

**No. 18798.**

Supreme Court of Appeals of
West Virginia.

April 18, 1989.

McHugh, J., filed dissenting opinion in
which Miller, J., joined.

Dale W. Steager, Sp. Asst. Atty. Gen.,
Charleston, for Michael E. Caryl.

Rebecca A. Baitty, Lonnie C. Simmons,
Ditrapano & Jackson, Charleston, for Daily
Gazette Co.

BROTHERTON, Chief Justice.

This case involves an appeal by the State
Tax Commissioner from the order of the
Kanawha County Circuit Court ruling that
the tax compromise records sought by the
Daily Gazette Company are subject to disclosure. We agree with the State Tax
Commissioner's contention that the information sought is confidential pursuant to
W.Va.Code § 29B–1–4(5) (1986) and § 11–10–5d(a) (1987), and therefore reverse the
decision of the Kanawha County Circuit
Court.

Prior to this appeal, CSX brought suit
against the State Tax Commissioner in federal district court in a case styled *Chesapeake & Ohio Railway Co. v. Rose*, 651
F.Supp. 1463 (S.D.W.Va.1985), affirmed
without written opinion, 809 F.2d 785 (4th
Cir.1987). Along with two other railroad
companies, CSX requested declaratory and
injunctive relief in federal court, contending that the West Virginia carrier income
tax was discriminatory as imposed upon
railroads and other common carriers in vio-

lation of the Railroad Revitalization and Regulatory Reform Act of 1976.[1] As evidence of discrimination, the railroads introduced unsigned copies of certain state tax returns from their records. On April 7, 1983, the federal district court enjoined the Commissioner from imposing additional liability against the railroad pending the decision in *Rose.* The federal district court then ruled that the tax imposed did not discriminate against the railroads and denied the declaratory and injunctive relief requested. *Id.* at 1481. The plaintiffs appealed to the Fourth Circuit; however, the Fourth Circuit affirmed the district court's order without opinion. Thereafter, CSX and the Tax Commissioner reached a compromise of CSX's tax liability. The terms of the compromise were not fully disclosed and are the object of this litigation.

On March 19, 1987, the Gazette requested from the State Tax Commissioner "any and all documents related to [the] settlement between the State Tax Department and the CSX Corporation" pursuant to the State Freedom of Information Act. On March 30, 1987, the Commissioner denied the request on the basis that the tax compromise records were confidential under W.Va.Code §§ 11–10–5d & 5q (1987) and thus, specifically excepted from disclosure under the West Virginia Freedom of Information Act.[2] After a second request was made by the Gazette to the Attorney General, Charles G. Brown, III, the Gazette filed suit against Attorney General Brown.

The Gazette instituted a declaratory judgment proceeding under W.Va.Code § 29B–1–5 (1986) in the Circuit Court of Kanawha County on May 29, 1987. The Tax Commissioner moved for summary judgment under Rule 56, stating that tax compromise records were exempt from disclosure under W.Va.Code § 29B–1–4(5) because of the confidentiality requirement of W.Va.Code § 11–10–5d & 5q. On September 28, 1988, the circuit court ruled that:

the newspaper is entitled to information concerning all settlements entered into

under W.Va.Code § 11–10–5q where there has been prior court litigation between the State Tax Commissioner and the taxpayer, including any amended tax returns filed for the years in controversy as well as tax returns filed by the taxpayer for subsequent years regardless of the tax involved; and that, if documents or records do not exist which disclose in detail the events and circumstances surrounding the negotiations in settlement of such cases, the State Tax Commissioner "shall provide, in addition to available records and documents, narrative statements by every employee or agent of the defendant (State Tax Commissioner) or the agent of the State of West Virginia who participated directly or indirectly in such compromise."

In the companion case to this appeal, *State ex rel. Michael Caryl v. The Honorable Andrew J. MacQueen,* No. 18803, Commissioner Caryl sought a writ of prohibition from this Court seeking to prevent disclosure of the compromise information in the pending case of *The Daily Gazette Co. v. Brown.* That writ was granted, pending our decision in this case.

■ Thus, the task before this Court is to determine whether the tax compromise records are exempt from disclosure under the Freedom of Information Act. For the reasons stated below, we find that the records relating to tax liability compromises made pursuant to the Tax Commissioner's authority under W.Va.Code § 11–10–5q (1987) are exempt from disclosure.

■ This Court has consistently held that the disclosure provisions of the West Virginia Freedom of Information Act shall be liberally construed. *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985). West Virginia Code § 29B–1–1, *et seq.* (1986), provides for the release of all public records to any person, unless otherwise expressly prohibited in section four of the Act.[3] A specific exception to the general

---

1. Pub.L. No. 94–210, § 306, 90 Stat. 54 (1976) 49 U.S.C. § 11503.

2. West Virginia Code § 29B–1–4(5) (1986).

3. West Virginia Code § 29B–1–3(1) (1986) provides that "[e]very person has a right to inspect or copy any public record of a public body in

rule, however, is information otherwise "exempted from disclosure by statute." [4] W.Va.Code § 29B–1–4(5) (1986). Consequently, the Freedom of Information Act directs us to W.Va.Code § 11–10–1 *et seq.* (1987), the West Virginia Tax Procedure and Administration Act, to determine whether there are specific statutory provisions which classify tax compromise records as confidential.

In *Spencer v. Yerace*, 155 W.Va. 54, 180 S.E.2d 868 (1971), this Court addressed the issue of legislative intent and statutory construction:

> In the construction of statutes, it is the legislative intent manifested in the statute that is important and such intent must be determined primarily from the language of the statute.... In ascertaining the legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.

*Id.* 155 W.Va. at 59–60, 180 S.E.2d at 871–72. Therefore, we must examine W.Va. Code § 11–10–1 *et seq.* in its entirety in order to determine the purpose of the Legislature in enacting this statute.

West Virginia Code § 11–10–5d(a) (1987) reflects both the general rule providing for the confidentiality of tax information and the exception from that general rule:

> Except when required in an official investigation by the tax commissioner into the amount of tax due under any article administered under this article *or in any*

*proceeding in which the tax commissioner is a party before a court of competent jurisdiction to collect or ascertain the amount of such tax* and except as provided in subsections (d) through (m), it shall be unlawful for any officer or employee of this state to divulge or make known in any manner the tax return, or any part thereof, of any person or disclose information concerning the personal affairs of any individual or the business of any single firm or corporation, or disclose the amount of income, or any particulars set forth or disclosed in any report, declaration or return required to be filed with the tax commissioner....

(Emphasis added.) [5] The Gazette argues that the CSX tax compromise was a settlement of the prior litigation in *Rose* and thus, any information relating to that compromise is disclosable under the exception to confidentiality found in W.Va.Code § 11–10–5d(a).

We disagree with the Gazette's argument and hold that records relating to tax compromises are exempt from disclosure under the Freedom of Information Act. Our conclusion is supported by a careful reading of W.Va.Code § 11–10–5q(d) and (e), which authorizes the compromise of tax liability.[6] In part, the statute provides:

> (d) *Record of compromise* —Whenever a compromise is made by the tax commissioner under subsection (c), there shall be placed on file in the tax commissioner's office the opinion of the tax com-

---

this State, except as otherwise expressly provided by section four [§ 29B–1–4] of this article."

**4.** West Virginia Code § 29B–1–4(8) (1986) also specifically exempts from disclosure "[i]nternal memoranda or letters received or prepared by any public body."

**5.** The Legislature also created a criminal penalty in W.Va.Code § 11–10–5d(c) (1987), which provides that "[a]ny officer or employee (or former officer or employee) of this state who violates this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars or imprisoned for not more than one year, or both, together with costs of prosecution."

**6.** West Virginia Code § 11–10–5q(c) (1987) provides the basis for reaching a compromise:

*Compromises authorized.*—The tax commissioner may compromise all or part of any civil case arising under the provisions of this article. In all such matters involving issues in respect of tax liability in controversy of fifteen thousand dollars or more for one or all of the years involved in such matter, claim or case, the tax commissioner shall seek the written recommendation of the attorney general before entering into such compromise. Any liability for tax (including any interest, additions to tax and penalties) may be compromised upon one or more, or both, of the following grounds:
(1) Doubt as to liability; or
(2) Doubt as to collectibility.

missioner's legal counsel (with his reasons therefor) and any written recommendation of the attorney general received pursuant to subsection (c) above together with a statement of:

(1) The amount of tax assessed,

(2) The amount of interest, additions to the tax, or assessable penalty imposed by law on the person against whom the tax is assessed, and

(3) The amount actually paid in accordance with the terms of compromise.

\* \* \* \* \* \*

(e) *Report to Legislature*—The tax commissioner shall submit to the Speaker of the House of Delegates, the President of the Senate and the legislative auditor a quarterly report summarizing the issues and amounts of liabilities contained in the agreements and compromises into which he has entered pursuant to this section. *Such report shall be in a form which preserves the confidentiality of the identity of the taxpayers involved in such agreements* and compromises. Notwithstanding any other provision of law to the contrary, the agreements and compromises entered into pursuant to this section shall be subject to audit, in their entirety, by the legislative auditor.

(Emphasis added.) [7]

While we acknowledge that confidentiality is not specifically addressed in W.Va. Code § 11–10–5q(d), section (e) directs that the report to the Legislature be made in such a manner so as to preserve the confidentiality of the taxpayer involved in the compromise.[8] For the Legislature's specific finding of confidentiality in W.Va.Code § 11–10–5q(e) to have any force and effect, then W.Va.Code § 11–10–5q(d) must also be read to require the confidentiality of the taxpayer's identity. We believe the Legislature's intent was that information related to tax compromises be exempt from disclosure in order to protect the taxpayer's right to privacy.

In creating W.Va.Code § 11–10–5q (1987), the Legislature provided a specific statute dealing with tax compromises. The rules of statutory construction require that a specific statute will control over a general statute when an unreconcilable conflict arises between the terms of the statutes. *See* syl. pt. 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268, 273 (1983).[9] An analysis of this rule leads us to the conclusion that the more specific statutory provision dealing with tax compromises in W.Va. Code § 11–10–5q (1987) would control over the more general confidentiality provision found in W.Va.Code § 11–10–5d(a) to the extent that a conflict exists regarding the confidentiality of tax compromise information. We, therefore, conclude that even if a situation involving a tax compromise meets the exception from confidentiality found in W.Va.Code § 11–10–5d(a), the more specific provisions mandating tax compromise confidentiality found in W.Va. Code § 11–10–5q would prevail.

Our disagreement with the Gazette's interpretation of W.Va.Code § 11–10–5d(a) also stems from the statutory exception to

---

7. The compromise provision was passed as part of the West Virginia Combined Amnesty and Tax Compliance Act of 1986. The Committee on Finance recommended the bill be passed on May 21, 1986, but two delegates from the House proposed an amendment providing that the compromise would only be authorized with the "advice and consent of the Attorney General...." The amendment was rejected and a compromise agreement was reached in which only the written recommendation of the Attorney General was required. The final draft of the bill passed the Legislature with an effective date of July 1, 1986.

8. While protecting the confidentiality of the taxpayer, the Legislature also provided a method to check the tax compromises by subjecting any compromise to an audit by the Legislative Auditor. West Virginia Code § 11–10–5q(e) (1987) provides, in part, that: "... agreements and compromises entered into pursuant to this section shall be subject to audit, in their entirety, by the legislative auditor."

9. We do not need to analyze the State Freedom of Information Act with W.Va.Code § 11–10–5d(a) and 5q (1987), as the statutes are not in conflict. The confidentiality provisions found in W.Va.Code § 11–10–5d and 5q (1987) are the exemptions referred to in W.Va.Code § 29B–1–4 (1986).

the confidentiality provision found in subsection (a), which is invoked only where the proceeding involving the tax commissioner is one to "collect or ascertain the amount of such tax...." From a review of the federal district court order in *Rose*, it is evident that the purpose of the suit brought by the railroads was to determine whether the carrier tax statute discriminated against the railroads. Only after the issue of constitutionality was decided by the court could the question of the amount of tax owed be addressed by the Tax Commissioner. Since the determination of the amount of tax owed was not the primary object of the federal litigation, we do not believe the confidentiality exception can be properly invoked by the Gazette.[10]

In holding that the Gazette could not properly invoke the exception to the confidentiality provision found in W.Va.Code § 11–10–5d(a), we do not limit the ability to invoke the exception to the tax commissioner or his agent. However, we believe the exception was primarily aimed at protecting the tax commissioner from criminal sanctions when involved in a lawsuit and not as a means for a third party to obtain otherwise confidential information.[11] By mandating a criminal penalty when a state employee violates the confidentiality requirements of subsection (a), the Legislature emphasized the importance of the confidentiality provisions.[12] Without the exception to confidentiality found in W.Va. § 11–10–5d(a), the tax commissioner would be unable to effectively prosecute or defend a suit to "collect or ascertain the amount" of such tax because of the criminal penalty.

As authority for their argument, the Gazette points to the federal tax regulations, 26 U.S.C.S. § 7122 (Law.Coop.1988), which provide a similar mechanism for effecting tax compromises. We note that § 7122(b) is virtually identical in terms to W.Va.Code § 11–10–5q(d):

Section 7122   Compromises.

(a) Authorization.

The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

(b) Record.

Whenever a compromise is made by the Secretary in any case, there shall be placed on file in the office of the Secretary the opinion of the General Counsel for the Department of the Treasury or his delegate, with his reasons therefor, with a statement of—

(1) The amount of tax assessed,

(2) The amount of interest, addition amount, additional to the tax, or assessable penalty, imposed by law on

---

**10.** We recognize the argument that the amount of tax owed is ultimately the bottom line even when the primary question is the constitutionality of the tax. In this case, however, the two issues are separate and distinct. It does not necessarily follow that no tax is owed simply because the carrier tax statute was ruled unconstitutional. Rather, it would become the Legislature's duty to rewrite the statute so as to tax citizens in a constitutional manner.

**11.** While we cannot state in all honesty that the statute is perfectly clear on the issue of confidentiality, we believe the intent was toward caution in disclosure. We note with interest the speech of the tax commissioner on May 16, 1986, at the Public Hearing with the Joint Senate and House Finance Committee regarding the Tax Amnesty and Compromise Bill (Senate Bill 4). Speaking to the Finance Committees and

interested taxpayers and practitioners, Commissioner Caryl stated, in part, that:

> [v]ery importantly also, the bill clarifies the terms of the confidentiality restrictions on disclosure of taxpayer information, and clearly identifies the limited exceptions to such confidentiality. This is an important reform because, given the criminal sanctions for improper disclosure which are retained in the law, the ambiguities of the existing disclosure provision mandates excessive caution. Such caution, incredibly, extends to the Department's refusal to disclose matters which are otherwise properly of public record.

Following the Commissioner's remarks, several other speakers were heard and questions fielded, but no comments were made on the Commissioner's remarks regarding confidentiality.

**12.** West Virginia Code § 11–10–5d(c) (1987).

the person against whom the tax is assessed, and

(3) The amount actually paid in accordance with the terms of the compromise.

Notwithstanding the foregoing provisions of this subsection, no such opinion shall be required with respect to the compromise of any civil case in which the unpaid amount of tax assessed (including any interest, additional amount, addition to the tax, or assessable penalty) is less than $500.

Unlike W.Va.Code § 11–10–5q, the federal tax regulations specifically permit the disclosure of return information "to the extent necessary to permit inspection of any accepted offer-in-compromise under section 7122 relating to the liability for a tax imposed by this title." 26 U.S.C.S. § 6103(k)(1). We do not, however, find this fact to be convincing evidence that a similar result was intended by our Legislature.

A review of W.Va.Code § 11–10–1 *et seq.* (1987) fails to reveal any similar provision specifically permitting disclosure of compromise information. To the contrary, we find persuasive evidence of the legislative intent towards confidentiality in the language of W.Va.Code § 11–10–5q(e), which orders that the identity of the taxpayer remain confidential. As the West Virginia Code does not contain a specific compromise disclosure provision, we fail to see the relevance of the federal tax regulations to our analysis of the West Virginia tax statute.

The Gazette next contends that our opinion in *Daily Gazette Co., Inc. v. Withrow,* 177 W.Va. 110, 350 S.E.2d 738 (1986), supports their proposition that they are entitled to the information relating to the compromise. *Withrow* involved a federal civil rights suit which was based upon the actions of the sheriff and his employees under color of state law. The suit was settled, and the parties agreed the terms would be confidential. The Gazette sued to obtain the settlement information and this Court ruled that the settlement information was discoverable as a public record, despite

the confidentiality agreement, since the settlement related to conduct of the public's business. *Id.* at 742–43. However, *Withrow* did not involve an exception to the Freedom of Information Act which would statutorily preclude disclosure of that information. Although we agree that *Withrow* permits the discovery of a settlement of a suit involving a public official in his official capacity, we believe *Withrow* is distinguishable by the simple but vital fact that the information sought in *Withrow* was not otherwise protected by statute. The statutory protection provided by the Legislature must prevail over our holding in *Withrow* lest we usurp the duties of the Legislature and create an exemption where none was intended.

█ Nor are we persuaded by the Gazette's argument that any right to confidentiality was waived by the State Tax Commissioner. Specifically, the Gazette contends that because the Governor and Treasurer were advised of the compromise by the Tax Commissioner, any right to future confidentiality was waived. We note initially that W.Va.Code § 11–10–5d(d) (1987) provides that "[a]ny person protected by the provisions of this article may, in writing, waive the secrecy provisions of this section...." However, neither party has suggested that a written waiver has occurred. Moreover, it is impossible for the Tax Commissioner to waive a right which belongs solely to the taxpayer. We do not treat individual rights so lightly.

█ The Gazette's final contention is equally meritless. The mere fact that prior tax returns were introduced at trial does not open up for public scrutiny a Pandora's box of other tax information involving that particular taxpayer. Indeed, to do so would seriously inhibit conscientious taxpayers from bringing suit to question tax liability. The Legislature clearly intended to protect a taxpayer's right to privacy by enacting the confidentiality provisions found in W.Va.Code § 11–10–5d(a) and § 11–10–5q. This Court is duty bound to enforce that right.[13]

---

13. We grant, however, that the tax records admitted into evidence during the federal litiga-

Accordingly, we hold that tax compromise information made and maintained pursuant to W.Va.Code § 11–10–5q (1987) is exempted from disclosure under the provisions of W.Va.Code §§ 11–10–5q and 29B–1–4(5). The order of the Kanawha County Circuit Court is reversed.

Reversed.

McHUGH, Justice, dissenting:

I respectfully dissent. Although the majority's approach is well intentioned, it is ill conceived. The primary springboard must be the State Freedom of Information Act, *W.Va.Code*, 29B–1–1 to –6, as amended, and not the tax statutes of the state. The majority opinion conflicts with the public policy forcefully declared in *W.Va.Code*, 29B–1–1 [1977]: "[A]ll persons are, *unless otherwise expressly provided by law*, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." (emphasis added) Consistent with this declaration of policy, *W.Va.Code*, 29B–1–4(5) [1977] provides that "[i]nformation specifically exempted from disclosure by statute" is specifically exempt from disclosure under the State Freedom of Information Act.

The question presented by this case is whether state tax compromise documents and related state tax returns are "specifically exempted from disclosure" to the public by any of the state statutes. Applying the principle, recognized by the majority in syllabus point 1, that the exemptions to the Freedom of Information Act are to be strictly construed, one searches in vain for such a *specific* exemption, except as to information in reports to the legislature on state tax compromises.

Neither of the tax statutes mentioned by the majority constitutes such a specific exemption as to all state tax compromise documents and related returns. *W.Va. Code*, 11–10–5d(a) [1986, 1988], providing for the confidentiality of tax returns and return information, contains an exception which is applicable here. Tax returns and return information are subject to disclosure "in any proceeding in which the tax com-

missioner is a party before a court of competent jurisdiction to collect or ascertain the amount of ... tax[.]" While the action brought by CSX in the federal district court was brought to determine the constitutionality of the West Virginia carrier income tax statute, as opposed to determining the particular amount of tax liability, it results in a broad construction in favor of exemption from disclosure to conclude that the amount of tax is not involved in the action to determine constitutionality. The majority concedes as much in footnote 10 of its opinion: "[T]he amount of tax owed is ultimately the bottom line even when the primary question is the constitutionality of the tax." This exception to the confidentiality of tax returns and return information is a legislative recognition that a taxpayer does not reasonably expect privacy with respect to the taxpayer's tax returns and return information when the taxpayer is involved in tax litigation in court. *See W.Va.Code*, 11–10–5d(k) [1986, 1988]. The question of the confidentiality of "closing agreements" without litigation in court, *see W.Va.Code*, 11–10–5q(a)–(b) [1986], is not before this Court in this case.

*W.Va.Code*, 11–10–5q [1986], involving state tax compromises, provides, in subsection (e), for confidentiality of the taxpayers' identity in the tax commissioner's quarterly reports to the legislature, but does not, in subsection (d), provide for such confidentiality in the compromise record documents required to be maintained by the tax commissioner, specifically, the opinion of the tax commissioner's legal counsel and any written recommendation of the attorney general. The majority, unlike the legislature, inserts the confidentiality provision of subsection (e) into subsection (d) also. The rule of strictly construing exemptions from disclosure under the Freedom of Information Act would result in the conclusion that the documents in subsection (d) of *W.Va.Code*, 11–10–5q [1986] are subject to disclosure, for they are not specifically exempted.

In short, as stated by the majority in footnote 11 of its opinion, "we cannot state in all honesty that the [tax] statute is per-

tion in *Rose* are not confidential as they are part

of the record in the litigation in question.

fectly clear on the issue of confidentiality[.]" That being the case, the Freedom of Information Act requires disclosure of the state tax compromise documents and related state tax returns and return information, except the reports to the legislature. "The people, in delegating authority, do not [implicitly] give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed[.]" *W.Va.Code*, 29B–1–1 [1977].

Significantly, federal tax law provides for disclosure of accepted offers-in-compromise: "Return information shall be disclosed to members of the general public to the extent necessary to permit inspection of any accepted offer-in-compromise under section 7122" of the *Internal Revenue Code. I.R.C.* § 6103(k)(1) (1982). This rule of disclosure should be of highly persuasive value, particularly because *W.Va. Code*, 11–10–5q [1986] is modeled, in part, upon *I.R.C.* §§ 7121 and 7122 (1982). That *W.Va.Code*, 11–10–5q(d) [1986] does not expressly authorize disclosure is immaterial because disclosure is authorized under the State Freedom of Information Act, unless there is a specific exemption. The question is whether there is a specific exemption from disclosure, not whether disclosure is specifically authorized by the tax statutes.

As to the provisions of *W.Va.Code*, 11–10–5d(c) [1986, 1988] imposing a misdemeanor penalty upon a state officer or employee (or former state officer or employee) for violation of the confidentiality requirements for tax returns and return information, such a penalty would not be valid when the information was disclosed under the Freedom of Information Act. It should be noted that a custodian of public records who willfully violates the provisions of the Freedom of Information Act is likewise guilty of a misdemeanor. *W.Va. Code*, 29B–1–6 [1977].

For the foregoing reasons, I dissent. I am authorized to state that Justice MILLER joins in this dissenting opinion.