385 S.E.2d 646

**STATE of West Virginia ex rel. Michael E. CARYL, State Tax Commissioner,**

v.

**Honorable A. Andrew MacQUEEN, III Judge of the Circuit Court of Kanawha County and Charles G. Brown, Attorney General for the State of West Virginia.**

No. 18803.

Supreme Court of Appeals of West Virginia.

June 15, 1989.

Dissenting Opinion Nov. 3, 1989.

Dale W. Steager, Sp. Atty. Gen., Charleston, for Caryl.

Steven D. Herndon, Sol. Gen., Charleston, for Charles G. Brown.

BROTHERTON, Chief Justice:

This case involves an action in prohibition filed by the State Tax Commissioner to prohibit Judge MacQueen from issuing a decision or releasing any information relating to the CSX tax compromise in a companion civil action, The Daily Gazette Co., Inc. v. Charles G. Brown, III, Attorney General, pending disposition of a third civil action styled *The Daily Gazette Co., Inc. v. Michael E. Caryl, State Tax Commissioner*, 181 W.Va. 42, 380 S.E.2d 209 (1989).

In the *Daily Gazette* opinion, we ruled that the tax compromise information sought by the Gazette was intended by the Legislature to remain confidential and thus exempt from disclosure under the West Virginia Freedom of Information Act. West Virginia Code § 11–10–5d(a) (1987)

makes it unlawful "for any officer or employee of this State" to release confidential tax information. In order to effectuate the legislative intent, the prohibition against disclosure must apply equally to all members of state government; it would be small comfort to a taxpayer to learn that although the State Tax Department was forbidden to disclose the confidential information, the Attorney General was free to release the file. We do not believe a party who failed in a direct attempt to obtain the information should succeed through the back door.

We are concerned, however, about the Attorney General's cavalier attitude regarding the dissemination of information to which he became privy in the course of his position as Attorney General. Thus, we choose to address the remaining issue of whether the relationship between the Attorney General and the State Tax Commissioner is that of an attorney to client, which would have precluded the Attorney General from disclosing the CSX tax compromise information existing in his files.

The role of the State Attorney General is defined in W.Va.Code § 5–3–1 *et seq.* (1987). Specifically, W.Va.Code § 5–3–1 provides that:

> The attorney general shall give his written opinion and advice upon questions of law, and shall prosecute and defend suits, actions, and other legal proceedings, and generally render and perform all other legal services, whenever required to do so, in writing, by ... the tax commissioner, ... and it shall be unlawful from and after the time this section becomes effective [August 17, 1932] for any of the public officers, commissions, or other persons above mentioned to expend any public funds of the state of West Virginia, for the purpose of paying any person, firm, or corporation, for the performance of any legal services....

Similarly, W.Va.Code § 5–3–2 sets out additional duties charged to the Attorney General:

> The attorney general shall appear as counsel for the state in all causes pending in the supreme court of appeals, or in any federal court, in which the state is interested; he shall appear in any cause in which the state is interested that is pending in any other court in the state, on the written request of the governor ... he shall defend all actions and proceedings against any state officer in his official capacity in any of the courts of this state or any of the federal courts when the state is not interested in such cause against such officer, but should the state be interested against such officer, he shall appear for the state....

The Legislature considered the Attorney General's role in tax compromise situations when the compromise provision was passed as part of the West Virginia Combined Amnesty and Tax Compliance Act of 1986. Although the Committee on Finance recommended that the bill be passed on May 21, 1986, the House proposed an amendment providing that the compromise would only be authorized with "the advice and consent of the Attorney General...." However, the amendment was rejected and a compromise agreement was reached in which only the written recommendation of the Attorney General was required. The W.Va.Code § 11–10–5q(c) & (d) now provides:

> (c) *Compromises authorized.*—The tax commissioner may compromise all or part of any civil case arising under the provisions of this article. In all such matters involving issues in respect of tax liability in controversy of fifteen thousand dollars or more for one or all of the years involved in such matter, claim or case, the tax commissioner shall seek the written recommendation of the attorney general before entering into such compromise. Any liability for tax (including any interest, additions to tax and penalties) may be compromised upon one or more, or both, of the following grounds:
>
> (1) Doubt as to liability; or
>
> (2) Doubt as to collectibility.
>
> (d) *Record of compromise.*—Whenever a compromise is made by the tax commissioner under subsection (c), there shall be placed on file in the tax commissioner's office the opinion of the tax commissioner's legal counsel (with his rea-

sons therefor) and any written recommendation of the attorney general received pursuant to subsection (c) above together with a statement of:

(1) The amount of tax assessed,

(2) The amount of interest, additions to the tax, or assessable penalty imposed by law on the person against whom the tax is assessed, and

(3) The amount actually paid in accordance with the terms of compromise.

Notwithstanding the foregoing provisions of this subsection (d), no such opinion shall be required with respect to the compromise of any civil case in which the amount of tax assessed (including any interest, additions to tax or assessable penalty) is less than one thousand dollars.

The Attorney General denies the existence of an attorney-client privilege between the Tax Commissioner and himself which would preclude him from disclosing the tax compromise information. He argues that when he administers a statute such as W.Va.Code § 11–10–5q, his relationship with the remainder of the government of the State of West Virginia is that of an independent administrative officer within the executive branch of the government. At the same time, however, the Attorney General also asserts that an attorney-client relationship existed in his role as the "statutory legal representative of the Tax Commissioner."[1] Although the Attorney General acknowledges the instances in which he acts as legal counsel to the State, he maintains that when providing a recommendation for the Tax Commissioner regarding a settlement pursuant to W.Va. Code § 11–10–5q(c), his actions should be construed as that of an independent administrative officer administering a statute and not as the actions of an attorney to a client.

■ We view the Attorney General's position as a transparent attempt to straddle both sides of the ethical fence, although it is unclear from his brief on which side he actually stands. Nowhere in W.Va.Code § 11–10–1 *et seq.* (1987) do we find any authority for the Attorney General's proposition that he acted as an independent executive officer. To the contrary, W.Va.Code § 5–3–1 clearly charges the Attorney General with the duty to give his legal opinion and advice to the Tax Commissioner, while his recommendation is specifically required by W.Va.Code § 11–10–5q(c) when a potential tax compromise is being considered. "By statute, the West Virginia Attorney General is the legal representative of state officers and agencies sued in their official capacities. In the absence of other statutory or constitutional provisions to the contrary, he is their sole legal representative in the courts and they are his clients." 2A Michies Jurisprudence, Attorney General § 2 (1988 Cumm.Supp.). We find nothing in the Code or Constitution which excuses the Attorney General from his duty. For his part, the Tax Commissioner, like any other client in an attorney-client relationship, was not required to accept that ad-

---

**1.** Curiously, in his brief, the Attorney General maintains that:

In his role as the statutory legal representative of the Tax Commissioner, the Attorney General accepted the role of attorney to client. In the provision of advice under Code § 11–10–5q(c), the Attorney General occupied the role of an independent executive officer. In the first role, the attorney-client privilege existed. In the second role, no attorney-client privilege existed. As a result, two files were developed containing information regarding the CSX matter. One file was privileged. One was not. The contents of the two files differed. One file contained the information given to the Attorney General in his role as attorney for the Tax Commissioner. The other file contained information delivered to the Attorney General in his role of providing a recommendation on settlements. Thus, the Attorney General concludes that the second file, containing information delivered to the Attorney General in his role of providing a recommendation on settlements, was not privileged and was disclosable by the Attorney General's office.

The distinction between the two roles identified by the Attorney General is so fine as to be nonexistent. The Attorney General is unable to explain how the two roles differ with any degree of clarity. Moreover, the Attorney General fails to account for the fact that by maintaining that two separate but identical files exist, one of which is confidential and one not, the privileged information would, in essence, be released along with the nonprivileged file.

vice.[2] Thus, the relationship between the Attorney General and the Tax Commissioner is clearly one of an attorney to his client and shall be treated as such by the Attorney General with regard to the confidentiality of the information.[3]

The Attorney General argues that because W.Va.Code § 11–10–5q(d) requires that the opinion and recommendation of both the Tax Department's legal counsel and the Attorney General be kept on record, the Attorney General was obviously not acting as the Tax Department's attorney. However, we note that W.Va.Code § 5–3–1, while defining the Attorney General's duties, also forbids an agency to expend public funds for the purpose of payment of outside counsel since the purpose of the Attorney General's office is to fulfill that role. Moreover, the Attorney General's office has ruled that, absent statutory authority to the contrary, an agency is not permitted to maintain independent counsel. 50 Op. Att'y Gen. 185 (W.Va. 1963). Although we acknowledge that such a ruling is not binding authority, we find the opinion persuasive when read in conjunction with W.Va.Code § 5–3–1, since we are unable to find any statutory authority authorizing another to perform the Attorney General's statutory duties of providing legal advice to the Tax Commissioner. To the contrary, West Virginia Code § 11–1–1 (1987), which designates the powers and duties of the Tax Commissioner and State Tax Department, provides the Commissioner with the power to employ such staff as he deems necessary, as well as the authority to request the Attorney General to provide the legal services of the Attorney General's office when required. When considered in combination with W.Va.Code § 5–3–1, it is clear that the Legislature intended that the Attorney General's office act as the legal representative of the State Tax Department. Consequently, the fact the Tax Commissioner utilizes inhouse staff to prepare the compromise does not persuade us the Attorney General's role was anything less than that of an attorney to his client.

■ The Attorney General next asserts that our opinion in *Manchin v. Browning,* 170 W.Va. 779, 296 S.E.2d 909 (1982), supports his proposition that his actions under W.Va.Code § 11–10–5q are that of an independent administrative officer within the executive branch of government, and thus not subject to the constraints of an attorney-client relationship. We find no support for this proposition in *Manchin.* While our opinion in *Manchin* notes that the Attorney General may perform different functions,[4] we clearly state that the Attorney General is required to give legal advice, to prosecute and defend suits, and to appear in court on the State and its agencies' behalf. *Id.,* 170 W.Va. at 787, 296 S.E.2d at 917. Thus, even in situations where the Attorney General stands as an "administrator of the law," he remains the legal representative of the State and its citizens.[5] No exceptions were created dividing the Attor-

**2.** *See* 7 Am.Jur.2d Attorney General § 11 (1980) for a discussion of the advisory role of a state attorney general and the non-binding effect of such legal advice.

**3.** *See generally* Heiser, *The Opinion Writing Function of Attorneys General,* 18 Idaho L.Rev. 9 (1982).

**4.** In *Manchin,* we noted that in some cases:
such as in the areas of consumer protection and antitrust litigation, the Attorney General is statutorily charged as an administrator of the law and appears in civil proceedings on his own motion as the agent and legal representative of the state and the citizens thereof.... He also has standing to exercise judgment in the role of a party litigant when he appears in this Court as counsel for the state in criminal appeals and other actions to which the State of West Virginia is a party.... The Attorney General performs quite a different function when he appears to defend a state officer who is sued in his official capacity. In this circumstance the Attorney General does not appear as a party to the action. That role is filled by the state officer against whom the suit is brought. Rather, the Attorney General's function is to act as legal advisor and agent of the officer-litigant and to prosecute or defend, within the bounds of the law, the decision or policy of such officer which is called into question by such lawsuit. 170 W.Va. at 789, 296 S.E.2d at 919.

**5.** West Virginia Code §§ 5–3–1 and 5–3–2 (1987) make it equally clear that the Attorney General is required to act as the representative and legal counsel on behalf of the State of West Virginia.

ney General's role into diverse halves as alleged in his brief. Indeed, explicit in the title attorney general is the proposition that the holder of the title is the general counsel for the State. *Id.* at 918. We, therefore, find the Attorney General's reliance on *Manchin* to be meritless.

We believe this situation properly reflects the general rule that the Attorney General remains the legal representative of the State and its agencies unless specifically exempted by statute. No such specific exemption exists under W.Va.Code §§ 11-1-1 *et seq.* or 11-10-1 *et seq.* When W.Va. Code § 5-3-1 is read in conjunction with W.Va.Code §§ 11-1-1 and 11-10-5q(c), we can only conclude that the Attorney General stands as the legal representative of the Tax Commissioner and State Tax Department.

Writ granted.

McHUGH and MILLER, JJ., dissent and reserve the right to file dissenting opinions.

McHUGH, Justice, dissenting:

I, joined by Justice Miller, dissented in the companion case, *Daily Gazette Co. v. Caryl,* 181 W.Va. 42, 380 S.E.2d 209 (1989). For the reasons stated therein, the same state tax compromise documents also in question here are not specifically exempted from disclosure under the State Freedom of Information Act, *W.Va.Code,* 29B-1-1 to 29B-1-6, as amended, by the tax statutes, *W.Va.Code,* 11-10-5d(a) [1986, 1988] and *W.Va.Code,* 11-10-5q(d) [1986]. Consequently, the writ of prohibition seeking to keep this information regarding the official acts of the state tax commissioner, a public official, from the public should be denied. As mentioned in the dissenting opinion in *Daily Gazette Co. v. Caryl,* the question of the confidentiality of "closing agreements" without litigation in court, *see W.Va.Code,* 11-10-5q(a)-(b) [1986], is not before this Court in these cases. These cases simply do not involve the confidentiality of an individual's tax returns filed with the state tax department when there has been no litigation in court involving those returns.

Again, the primary focus here must be upon the State Freedom of Information Act, not upon the tax statutes. The majority has reversed the emphasis and has reached its decision on the basis of an issue as to confidentiality not before the Court. Accordingly, I dissent. I am authorized to state that Justice MILLER joins me in this dissenting opinion.