No. 16-0779  –  *Erik Patrick Wells v. State of West Virginia ex rel. Charles T. Miller*

**FILED**

**September 22, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Justice, dissenting:

The case *sub judice* is not a difficult case to decide.  This State's statutes, as well as this Court's prior cases interpreting those statutes, clearly address the issues raised in these proceedings and lead to the inevitable conclusion that Mr. Wells has satisfied the requirements to run as an independent candidate for the office of Clerk of Kanawha County in the November 2016 General Election.  Be that as it may, my colleagues nevertheless have convoluted the issues in this case by doggedly deciding that Mr. Wells is not a proper candidate for office despite his satisfaction of all of the statutory requirements that entitle him to have his name placed on the 2016 General Election ballot.  In reaching this conclusion, the majority has determined to ignore the express statutory language and our established precedent, instead inserting into these authorities invisible requirements that neither were intended nor adopted by the Legislature in promulgating this State's election laws.  Because the majority's opinion is wholly unsupported by the applicable law and completely fails to follow the express statutory language governing these proceedings, I emphatically dissent.

1

## *Mr. Wells is an Independent Candidate*

The crux of this case involves Mr. Wells' decision to run for office as an independent, or unaffiliated, candidate. Such nomenclature should not be confused with the Independent Party, which is a viable third party in many states. In West Virginia, however, it is not, because the Independent Party has not satisfied the statutory requirements requisite to its recognition as a "political party." *See* W. Va. Code § 3-1-8 (1965) (Repl. Vol. 2013). Thus, the majority's supposition that allowing Mr. Wells, who has conceded that he is a registered member of the Democrat Party, to run as an independent would confuse the voters is unfounded and without merit. All that Mr. Wells has professed to do is to run as an independent candidate who is not affiliated with any party. He is *not* seeking to run as a candidate representing the Democrat Party, or any other party, under the cloak of independence. Rather, Mr. Wells seeks to run for public office as an individual, who may or may not have a party affiliation, without representing any political party as its candidate.

Unquestionably, Mr. Wells is entitled to run as an independent candidate because of his constitutional right to freedom of association. While the majority attempts to sweep this inherent freedom under the rug, simply minimizing its existence does not obviate the importance of this fundamental constitutional right. The United States Supreme Court has explained the protections afforded by the freedom of association as follows:

> "It is beyond debate that freedom to engage in association for
> the advancement of beliefs and ideas is an inseparable aspect of

2

the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 78 S. Ct. 1163, 1171, 2 L. Ed. 2d 1488 (1958); see *NAACP v. Button,* 371 U.S. 415, 430, 83 S. Ct. 328, 336, 9 L. Ed. 2d 405 (1963); *Bates v. Little Rock,* 361 U.S. 516, 522-523, 80 S. Ct. 412, 416-417, 4 L. Ed. 2d 480 (1960). The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization. *Elrod v. Burns,* 427 U.S. 347, 357, 96 S. Ct. 2673, 2681, 49 L. Ed. 2d 547 (1976) (plurality opinion)[.] "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes,* 414 U.S. 51, 57, 94 S. Ct. 303, 307, 38 L. Ed. 2d 260 (1973).

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214, 107 S. Ct. 544, 548, 93

L. Ed. 2d 514 (1986) (additional citation omitted). Likewise, the Court has observed that

[b]arring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association. It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. *Tashjian, supra,* 479 U.S. at 214, 107 S. Ct. at 548; see also *Elrod v. Burns,* 427 U.S. 347, 357, 96 S. Ct. 2673, 2681, 49 L. Ed. 2d 547 (1976) (plurality opinion). Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, *Tashjian, supra,* 479 U.S., at 214, 107 S. Ct., at 548 (quoting *Kusper*[ *v. Pontikes*]*, supra,* 414 U.S. [51], at 57, 94 S. Ct. [303], at 307[, 38 L. Ed. 2d 260 (1973)]), but also that a political party has a right to "'identify the people who constitute the association,'" *Tashjian, supra,* 479 U.S., at 214, 107 S. Ct., at 548 (quoting *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 122, 101 S. Ct. 1010, 1019, 67 L. Ed. 2d 82 (1981)); cf. *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460-462, 78 S. Ct. 1163, 1172, 2 L. Ed. 2d 1488 (1958), and to select a "standard bearer who best represents the party's ideologies and preferences." *Ripon Society, Inc. v. National Republican Party,*

3

173 U.S. App. D.C. 350, 384, 525 F.2d 567, 601 (1975) (Tamm, J., concurring in result), cert. denied, 424 U.S. 933, 96 S. Ct. 1147, 47 L. Ed. 2d 341 (1976).

Depriving a political party of the power to endorse suffocates this right.

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 224, 109 S. Ct. 1013, 1020-21, 103 L. Ed. 2d 271 (1989).

In addressing the freedom of association, it is apparent that the United States Supreme Court has recognized that the right to associate cuts both ways–individuals have the right to associate with political organizations of their choosing *and* political organizations have the right to identify candidates who best reflect their beliefs. Thus, Mr. Wells has a right to associate with the group of citizens who nominated him to run for the office of Kanawha County Clerk *and* the group of citizens who signed the nominating petitions endorsing his candidacy have a right to select the candidate who they want to represent them. In rendering its ruling in this case, though, the majority unabashedly has decided that a candidate for political office may associate with but one group–the political party of which he is a registered member–and that the citizens who support him as a candidate representing their ideology have no right to associate with him because he is already "spoken for." I can find no support for such an interpretation of the constitutional right to freedom of association,

4

and I am simply incredulous that my brethren have adopted such a myopic view.[1]

### *Independent Candidates are Governed by W. Va. Code § 3-5-23*

The majority perpetuates its error by failing to give credence to the statute that governs independent or unaffiliated candidates, W. Va. Code § 3-5-23 (2009) (Repl. Vol. 2013), and this Court's interpretation thereof. By dictating that a candidate who is a registered member of a recognized political party cannot run as an independent or unaffiliated candidate, the majority casts aside all of the provisions of W. Va. Code § 3-5-23 in which the Legislature has painstakingly delineated the nomination process for such candidates. In doing so, the Legislature has not imposed a requirement that the candidate not be registered as a member of another political party and, in fact, even permits voters who are registered members of a political party to sign nominating certificates: "Notwithstanding any other provision of this code to the contrary, a duly registered voter may sign the certificate

---

[1]I would be remiss if I did not note that the majority's decision herein, which effectively precludes any person who is registered as a member of any political party from associating with citizens who share political ideologies, has far-reaching effects beyond the parameters of the instant proceeding. As recently reported, at least eight other independent candidates for public office in West Virginia, who have all satisfied the statutory requirements to run as an independent candidate, are in jeopardy of being removed from the 2016 General Election ballot all because they are members of a designated political party which they do not seek to represent as a candidate. *See* Phil Kabler, *In light of high court's ruling, counties mull candidates' fates*, Charleston Gazette-Mail, Sept. 13, 2016, at A1. Undoubtedly, the majority's decision will have the nefarious effect of chilling a political candidate's freedom of association, as well as the right of individual voters to nominate a candidate to represent their interests.

5

provided in this section *and may vote for candidates of his or her choosing in the corresponding primary election*." W. Va. Code § 3-5-23(d) (emphasis added).

Moreover, this Court expressly has held that

[a]n unsuccessful candidate for a nomination in a primary election may afterwards be nominated by certificate, under the provisions of the statute above referred to, as a candidate of a political party other than that with which he declared himself, on oath, to be affiliated in the preceding primary election.

Syl. pt. 2, *George v. Board of Ballot Comm'rs*, 79 W. Va. 213, 90 S.E. 550 (1916). This interpretation of W. Va. Code § 3-5-23 also presupposes that a person who is a registered member of a recognized political party may run as an independent candidate given that only members of recognized political parties may participate in this State's primary elections. Although the Legislature has revised the subject statutory language to prevent unsuccessful primary election candidates from subsequently running as independent candidates, the legislative amendments have stopped short of incorporating an unaffiliated proviso into the eligibility requirements of independent candidates. *Cf. Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997) (approving Minnesota's anti-fusion law); *Storer v. Brown*, 415 U.S. 724, 94 S. Ct. 1274, 39 L. Ed. 2d 714 (1974) (upholding California's one-year disaffiliation provision).

6

When interpreting a statute, this Court is charged with following the intent of the Legislature–not inserting or substituting our judgment for that of the legislators enacting the statutory language at issue. In this regard, this Court previously has held that "[t]he Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended." Syl. pt. 2, *Hall v. Baylous,* 109 W. Va. 1, 153 S.E. 293 (1930). Similarly, "[i]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposefully omitted.*" *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (emphasis added; citations omitted). *Accord* Syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996) ("If the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery."). Thus, it is apparent that the Legislature expressly intended to change the meaning of W. Va. Code § 3-5-23 to prohibit former primary candidates from running as independent candidates by employing specific wording to this effect. *See* Syl. pt. 2, *Hall*, 109 W. Va. 1, 153 S.E. 293. However, it is equally apparent that, by not incorporating a disaffiliation provision, the Legislature did not intend to permit only individuals who are not registered members of any

7

political party from seeking office as an independent candidate. *See Banker*, 196 W. Va. at

546-47, 474 S.E.2d at 476-77.

Despite its express acknowledgment that W. Va. Code § 3-5-23 governs

independent candidates,[2] the majority's insertion of an additional requirement that the

candidate be unaffiliated ascribes a meaning to the statute that the Legislature did not intend.

Although the Legislature, in its many amendments of this section, certainly could have added

an unaffiliated requirement to its terms as have other states,[3] its failure to do so for one

hundred years *after* this Court expressly found that a candidate who is affiliated with a major

political party nevertheless can run for office as an independent candidate dictates that the

Legislature never intended the restrictive interpretation the majority has ascribed to W. Va.

---

[2]In its opinion, the majority noted that

> this Court has historically recognized West Virginia Code § 3-5-23 as "providing the method for ballot access for *third-party and independent party candidates*." *Write-In Pritt Campaign v. Hechler*, 191 W. Va. 677, 681, 447 S.E.2d 612, 616 (1994) (emphasis added). Moreover, in [*West Virginia Libertarian Party v.*] *Manchin*, 165 W. Va. [206,] at 222, 270 S.E.2d [634,] at 644 [(1980)], this Court stated that the statute "constitute[s] a method for *third-party or independent candidates* to gain access to the general election ballot . . . . [and] that the petition process serves as the functional equivalent of a primary election." (emphasis added).

[3]*See, e.g.*, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997) (involving Minnesota's anti-fusion law); *Storer v. Brown*, 415 U.S. 724, 94 S. Ct. 1274, 39 L. Ed. 2d 714 (1973) (challenging California's one-year disaffiliation provision).

8

Code § 3-5-23. As such, this Court's longstanding, century old interpretation of a candidate's eligibility to seek office as an independent candidate, as well as the Legislature's implicit approval thereof, invariably remains intact in light of the majority's failure to expressly overrule the same. The resulting discordance–between our centennial opinion in *George* and the majority's confounding refusal to either follow or invalidate this precedent–undoubtedly will create an atmosphere of confusion and uncertainty for individuals seeking to run as independent candidates and officials charged with enforcing this State's election laws alike.

### *Independent Candidates are Not Required to File Certificate of Announcement*

The majority further erred by requiring independent candidates, such as Mr. Wells, to comply with the certificate of announcement requirements of W. Va. Code § 3-5-7 (2015) (Supp. 2016). Such a ruling completely ignores the statutory language at issue in this case as well as this Court's prior opinion interpreting the same and is a wrong interpretation of the applicable law.

W. Va. Code § 3-5-7 begins with the requirement that

> [a]ny person who is eligible and seeks to hold an office or political party position to be filled by election in any primary or general election held under the provisions of this chapter shall file a certificate of announcement declaring his or her candidacy for the nomination or election to the office.

9

W. Va. Code § 3-5-7(a). Interpreting the earlier version of this statute, which did not include the general election reference, this Court specifically found that candidates who were independent or representing a third party through the nominating certificate process of W. Va. Code § 3-5-23 were not required to file a certificate of announcement under W. Va. Code § 3-5-7:

> Pursuant to W. Va. Code § 3–5–23(a) (1986), the deadline for filing with the secretary of state the certificate and fee for a person seeking ballot access as a candidate for the office of president or vice-president as the nominee of a third-party otherwise qualifying for inclusion on the general election ballot by method other than primary election is the first day of August preceding the general election, and *such persons are not required to file a declaration of candidacy pursuant to W. Va. Code § 3–5–7 (1991).*

Syl. pt. 2, *State ex rel. Browne v. Hechler*, 197 W. Va. 612, 476 S.E.2d 559 (1996) (emphasis added).

While the statutory language of W. Va. Code § 3-5-7 has changed slightly since this Court's decision in *Browne*, the overarching fairness concerns have not, nor have they been addressed by the legislative amendments to this statute. In *Browne*, the Court recognized that the Legislature had imposed an August 1 filing deadline for presidential and vice-presidential candidates and, because they were not selected through the primary election process, the January filing deadlines for the certificate of announcement requirement of W. Va. Code § 3-5-7, which then pertained solely to primary election candidates, could not

10

be applied to them. *Browne*, 197 W. Va. at 614, 476 S.E.2d at 561. W. Va. Code § 3-5-7 now governs both primary and general election candidates, but two salient distinctions between the major political party candidates governed by W. Va. Code § 3-5-7 and the independent and third party candidates governed by W. Va. Code § 3-5-23 remain: (1) independent and third party candidates, *by definition*, do not participate in the primary election process and (2) W. Va. Code § 3-5-24 (2014) (Supp. 2016) imposes a *separate* filing deadline for independent and third party candidates which cannot be reconciled with the filing deadline imposed by W. Va. Code § 3-5-23.

In *Anderson v. Celebrezze*, 460 U.S. 780, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983) (plurality opinion), the United States Supreme Court found that an Ohio statute requiring independent and third party candidates to satisfy pre-primary filing deadlines was unconstitutional because such candidates are not selected through the primary election process and the legislation failed to appreciate the associational rights of such candidates and the voters who support them. The Supreme Court explained the unconstitutional impact of such deadlines upon independent candidates, and their citizen supporters, as follows:

> Not only does the challenged Ohio statute totally exclude any candidate who makes the decision to run for [office] as an independent after the March deadline. It also burdens the signature-gathering efforts of independents who decide to run in time to meet the deadline. When the primary campaigns are far in the future and the election itself is even more remote, the obstacles facing an independent candidate's organizing efforts are compounded. Volunteers are more difficult to recruit and

11

retain, media publicity and campaign contributions are more difficult to secure, and voters are less interested in the campaign.

It is clear, then, that the March filing deadline places a particular burden on an identifiable segment of Ohio's independent-minded voters. As our cases have held, it is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. "Our ballot access cases . . . focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens 'the availability of political opportunity.'" *Clements v. Fashing,* 457 U.S. 957, 964, 102 S. Ct. 2836, 2844, 73 L. Ed. 2d 508 (1982) (plurality opinion), quoting *Lubin v. Panish, supra,* 415 U.S. [709], at 716, 94 S. Ct. [1315], at 1320[, 39 L. Ed. 2d 702 (1974)].

A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and–of particular importance–against those voters whose political preferences lie outside the existing political parties. *Clements v. Fashing, supra,* 457 U.S., at 964, 102 S. Ct., at 2844 (plurality opinion). By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas. Historically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream. *Illinois Elections Bd. v. Socialist Workers Party, supra,* 440 U.S. [173], at 186, 99 S. Ct. [983], at 991[, 59 L. Ed. 2d 230 (1979)]; *Sweezy v. New Hampshire,* 345 U.S. 234, 250-251, 77 S. Ct. 1203, 1211-1212, 1 L. Ed. 2d 1311 (1957) (opinion of Warren, C.J.). In short, the primary values protected by the First Amendment–"a profound national commitment to the principle that debate on public issues should

> be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S. Ct. 710, 720, 11 L. Ed. 2d 686 (1964)–are served when election campaigns are not monopolized by the existing political parties.

*Anderson v. Celebrezze*, 460 U.S. at 792-94, 103 S. Ct. at 1572-73, 75 L. Ed. 2d 547 (footnotes and citation omitted). From this ruling in *Anderson*, then, it is apparent that the application of early filing deadlines to independent and third party candidates raises significant constitutional concerns regarding the freedom of such candidates and their supporters to associate.

Moreover, the majority's opinion effectively imposes two conflicting sets of filing deadlines upon independent candidates. By definition, an independent or third party candidate is someone who has not participated in the primary election, which criterion presupposes that the primary election must have been held before the persons eligible to run as independent or third party candidates can be determined. W. Va. Code § 3-5-23(a). W. Va. Code § 3-5-7 requires *all* candidates, for both the primary and general elections, to file a certificate of announcement by the end of January preceding the primary election. W. Va. Code § 3-5-7(c). If independent candidates must first wait for the primary election to run its course to determine who may run as an independent candidate, however, it is impossible for independent candidates to satisfy this temporal requirement. Moreover, W. Va. Code § 3-5-24, which pertains only to independent and third party candidates, and not to all candidates generally, imposes a completely different filing deadline. Pursuant to

13

W. Va. Code § 3-5-24(a), independent and third party candidates are required to file their candidacy papers by August 1 before the general election. This Court has long recognized that when both a general and a specific statute apply to a given set of facts, our well-established rules of statutory construction instruct that the specific statute governs. "The rules of statutory construction require that a specific statute will control over a general statute[.]" *Daily Gazette Co., Inc. v. Caryl,* 181 W. Va. 42, 45, 380 S.E.2d 209, 212 (1989) (citations omitted). Here, it is apparent that the specific August 1 filing deadline that applies solely to independent and third party candidates is the operative date by which Mr. Wells' candidacy papers should have been filed as opposed to the more general requirements of W. Va. Code § 3-5-7, which apply to all candidates without regard for the specific source of their candidacy.

Finally, the majority has condoned the circuit court's rejection of Mr. Wells' candidacy based solely upon his failure to complete the party affiliation portion of his certificate of announcement. While I disagree that Mr. Wells, as an independent candidate, was required to complete a certificate of announcement, I most certainly do not believe that his failure to list his party affiliation, standing alone, is sufficient to deprive him of the opportunity to run for public office. W. Va. Code § 3-5-7(d)(6) requires all candidates for partisan elections to list their party affiliation; W. Va. Code § 3-5-23(d) permits, but does not require, independent candidates to disclose their party affiliation. In the case *sub judice*, Mr.

14

Wells invariably found himself in a proverbial catch-22 situation when he was required to file a certificate of announcement under W. Va. Code § 3-5-7: he could either disclose his party affiliation as Democrat and risk being mistaken as a candidate representing that party, rather than as a candidate running independently of any particular party, or he could have listed independent as his party affiliation to signify that he is running as an independent candidate and risk prosecution for knowingly providing false information under W. Va. Code § 3-5-7(f). Rather than choosing between the lesser of these two evils, Mr. Wells simply left the party affiliation section of his certificate of announcement blank, as he was allowed to do on his independent candidacy papers, and now he must endure the wrath of that choice.

As noted previously, specific statutes are preferred over general statutes. Here, the requirement to disclose a candidate's party affiliation under W. Va. Code § 3-5-7(d)(6) simply cannot be reconciled with the discretionary disclosure language of W. Va. Code § 3-5-23(d). In such circumstances of irresolvable statutory conflict, "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA by Trumka v. Kingdon,* 174 W. Va. 330, 325 S.E.2d 120 (1984). Thus, as an independent candidate, Mr. Wells' candidacy filings were governed by those statutes that pertain specifically to independent candidates–W. Va. Code §§ 3-5-23 and 3-5-24–and not

15

by the provision applicable to all candidates generally.[4]

### *Independent Candidate Nominated by Certificate is Entitled to Inclusion on Ballot*

Lastly, I take issue with the majority's suggestion indicating that, "[i]t does not follow, though, that a third party or unaffiliated group of citizens who nominates a candidate pursuant to the provisions set forth in West Virginia Code § 3-5-23 is absolutely entitled to have its nominee appear on the ballot." (Citation omitted). Such a misguided statement completely ignores the express statutory language governing the candidacies of independent and third party candidates.

Pursuant to W. Va. Code § 3-5-23(d), "*[a]ll candidates* nominated by the signing of the certificates *shall* have their names placed on the official ballot as candidates, as if otherwise nominated under the provisions of this chapter." (Emphasis added). This Court previously has held that "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign*

---

[4]It should be noted that the majority's unfounded decision to require independent and third party candidates to comply with the certificate of announcement requirements and corresponding filing deadlines of W. Va. Code § 3-5-7 (2015) (Supp. 2016) has endangered the candidacies of at least two more candidates for public office in the 2016 General Election because they complied with the filing deadlines applicable solely to independent and third party candidates. *See* Kate White, *Erik Wells Decision: Candidates say they still belong on ballot in Nov.*, Charleston Gazette-Mail, Sept. 21, 2016, at C1.

*Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Moreover, "[i]t is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. pt. 1, *Nelson v. West Virginia Pub. Emps. Ins. Bd.,* 171 W. Va. 445, 300 S.E.2d 86 (1982). In light of these established precedents, then, it is apparent that if an independent candidate has satisfied the nominating requirements and obtained the requisite signatures, his name is *required* to be placed on the ballot. As such, because he satisfied the requirements to run as an independent candidate, Mr. Wells' name should be listed on the 2016 General Election ballot as a candidate for the office of Kanawha County Clerk. The majority's supposition to the contrary is simply not supported by the express statutory language.

### *Majority's Decision Disenfranchises Mr. Wells and His Supporters*

The Legislature clearly delineates the path an independent candidate for public office must follow to have his name placed upon the general election ballot. For reasons that escape me, the majority has littered this path with procedural landmines that not only make it virtually impossible for an independent candidate to achieve ballot access but which also disenfranchise those voters who wish to associate with such candidate. The United States Supreme Court appreciated the challenges faced by unaffiliated voters and third parties, cautioning that imposing early filing deadlines upon the candidates representing these groups would have deleterious consequences–not just for these candidates and the voters they

17

represent but for the major political parties also.

> The characteristic American third party . . . consists of a group of people who have tried to exert influence within one of the major parties, have failed, and later decide to work on the outside. States in which there is an early qualifying date tend to force such groups to create minor parties without first attempting to influence the course taken by a major one. For a dissident group is put to the choice of foregoing major-party primary and other prenomination activity by organizing separately early on in an election year, or losing all opportunity for action as a third party later.

> The same analysis, of course, is applicable to a "dissident group" that coalesces around an independent candidate rather than attempting to form a new political party.

*Anderson v. Celebrezze*, 460 U.S. at 805, 103 S. Ct. at 1578-79, 75 L. Ed. 2d 547 (internal quotations and citation omitted).

The effect of the majority's decision herein is not limited solely to the fate of Mr. Wells' candidacy for the office of Kanawha County Clerk. Rather, many more independent and third party candidates likely will be adversely impacted by these rulings in both this election cycle and in future years to come. Individuals, be they candidates for political office or voters for such candidates, are constitutionally guaranteed the right to associate with others who share their beliefs. Because the majority's decision in this case eviscerates this fundamental right, I resolutely dissent.

18