668 S.E.2d 217

STATE ex rel. the TUCKER COUNTY
SOLID WASTE AUTHORITY,
Petitioner,

v.

WEST VIRGINIA DIVISION OF
LABOR, Respondent,

West Virginia State Building and
Construction Trades Council,
AFL–CIO, Intervenor.

No. 33809.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 26, 2008.

Decided June 26, 2008.

Dissenting Opinion of Justice
Starcher July 17, 2008.

Rodney L. Bean, Christi R.B. Stover, Steptoe & Johnson PLLC, Morgantown, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Elizabeth G. Farber, Assistant Attorney General, Charleston, for Respondent.

Vincent Trivelli, The Law Office of Vincent Trivelli, PLLC, Morgantown, for Intervenor, West Virginia State Building and Construction Trades Council, AFL–CIO, and Attorney for Amicus Curiae, Kanawha Valley Builders Association.

DAVIS, Justice:

The petitioner herein, the Tucker County Solid Waste Authority (hereinafter "TCSWA"), requests this Court to issue a writ of prohibition against the respondent herein, the West Virginia Division of Labor (hereinafter "DOL"), to prevent the DOL from continuing administrative proceedings against it. Specifically, the TCSWA wishes to prohibit the enforcement of a DOL administrative order, entered June 29, 2007, which found the TCSWA did not pay certain temporary workers the prevailing wage and thus owes said workers additional wages and damages in the approximate amount of $199,760.30. In its petition to this Court, the TCSWA requests that we prohibit the enforcement of the hearing examiner's order because, as alleged by the TCSWA, (1) the prevailing wage was improperly applied to employees of a public authority; (2) the prevailing wage was improperly applied to work that was never let to contract; and (3) the legislative history of the West Virginia Prevailing Wage Act (hereinafter "the Act"), W.

Va.Code § 21-5A-1, *et seq.*, was not given deference. Upon a review of the parties' arguments, the record presented for consideration, and the pertinent authorities, we find that the TCSWA was not required to pay the prevailing wage to the workers involved in this case and, accordingly, grant the requested writ of prohibition.

## I

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying this original jurisdiction proceeding are as follows. In 2003, the Tucker County Solid Waste Authority ("TCSWA") began preliminary work on an expansion of its landfill.[1] To perform the excavation work for the new landfill cell, the TCSWA hired ten additional workers, from May until August, 2003. These employees performed the excavation work and transported the excavated dirt to existing areas of the landfill.[2] While most of these workers were hired on a temporary basis, the TCSWA retained a few workers as permanent employees; the majority of those workers who did not become permanent employees were terminated between November, 2003, and January, 2004, although some of these workers were terminated earlier, between June and August, 2003. The above-described excavation work was not let to contract, and the workers hired to complete it were not paid prevailing wage because the TCSWA considered them to be temporary TCSWA employees.

On July 17, 2003, Delegate Mary M. Poling[3] sent a letter to James R. Lewis,[1] Commissioner of the West Virginia Division of Labor, alleging that "the Tucker County Solid Waste Authority may have violated the law when they hired temporary employees to do the construction on the landfill expansion," and requesting an investigation of the matter. As a result of this correspondence, the West Virginia Division of Labor ("DOL") began an investigation and issued a subpoena duces tecum to the TCSWA on September 17, 2003, for the payroll records of all employees who worked on the "Tucker County Landfill Expansion Project." The TCSWA complied with this request. Thereafter, on or about March 30, 2004, the DOL corresponded with the TCSWA's temporary employees who had worked on said expansion project and requested each of them to provide additional information to the DOL. In April, 2004, the DOL informed the TCSWA that it had concluded that nine of the TCSWA employees who had worked on the expansion project should have been paid prevailing wage. As a result, the DOL determined that the TCSWA owed these workers an additional $95,820.82 in addition to penalties in a like amount as provided by W. Va.Code § 21-5A-9(b) (1961) (Repl.Vol.2002), for a total due of $191,641.64.

Thereafter, the TCSWA requested and was granted an informal conference with the DOL to explain why it believed the West Virginia Prevailing Wage Act ("Act") did not apply to its hiring of temporary workers to complete the excavation portion of the landfill expansion project. This meeting occurred on June 15, 2004, but no resolution was reached. Approximately nine months later, on March 8, 2005, the DOL determined that an additional TCSWA employee should have been paid the prevailing wage for his work on the landfill expansion project. Therefore, the DOL increased the total wages due and owing from the TCSWA to $99,880.15, or $199,760.30 with the addition of the like amount of damages for this sum.

---

1. By way of background, this landfill services approximately ten counties.

2. To complete a subsequent portion of the landfill expansion project, the TCSWA contracted with Geo-Synthetics, Inc., to install a plastic liner in the new landfill cell. There is no dispute that this portion of the expansion project was let to contract and that prevailing wages were paid under this contract.

3. Delegate Poling represents the Fortieth District, which encompasses Barbour County and a portion of Upshur County. In her letter to Mr. Lewis, she indicated that she had assisted one of the workers involved herein with his "Request for Assistance Questionnaire."

4. Mr. Lewis resigned his position as the Commissioner of the West Virginia Division of Labor. The present Commissioner is David Mullins.

Ultimately, the DOL referred the matter to a hearing examiner, who issued "Preliminary Findings of Fact and Conclusions of Law and Order as to Further Proceedings," on June 29, 2007. In an attempt to reconcile the various provisions of the Act, the hearing examiner concluded that "the Act was intended to apply to contracts of employment entered into by public authorities with persons for the specific purpose of such persons being engaged in the construction of public improvements, unless such work is for the specific purpose of making temporary or emergency repairs." Insofar as the landfill expansion project was neither a temporary nor an emergency repair, the hearing examiner reasoned that the Act applied and that the temporary workers the TCSWA had hired to complete the excavation work thereon should have been paid the prevailing wage. Additionally, the hearing examiner determined that further evidentiary proceedings would be necessary to finally resolve the dispute. Among the areas identified by the hearing examiner as requiring further factual development were the precise nature and type of the employment of the workers involved herein; whether the penalty provisions of W. Va.Code § 21–5A–9(b) applied to a direct employer scenario; and whether, if the penalty provisions did apply, the "honest mistake" exception of W. Va.Code § 21–5A–9(b) would relieve the TCSWA of liability for the prevailing wages not paid.

Following these rulings, the TCSWA filed a petition for writ of prohibition with this Court seeking to prohibit the further evidentiary proceedings recommended by the hearing examiner. By order entered January 10, 2008, this Court issued a rule to show cause. Thereafter, the West Virginia State Building and Construction Trades Council, AFL–CIO (hereinafter "Trades Council"), moved to intervene as a party respondent in this proceeding and was granted intervenor status by order entered February 13, 2008. In addition, the Kanawha Valley Builders Association (hereinafter "Association") moved for leave to appear in the case as Amicus Curiae; this Court granted the Association's motion by order entered February 13, 2008.[5]

5. We appreciate the appearance of the Association as Amicus Curiae in this case and will consider its arguments in connection with those advanced by the parties.

## II.

## STANDARD FOR ISSUANCE OF WRIT

This case is before the Court upon a petition for a writ of prohibition. When considering whether a prohibitory writ should issue in a particular case, we employ the following standard:

In determining whether to entertain and issue the writ of prohibition for cases not involving the absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Moreover, we have stated that "prohibition ... against judges [is a] drastic and extraordinary remed[y].... As [an] extraordinary remed[y], [it] [is] reserved for really extraordinary causes." *State ex rel. United States Fid. & Guar. Co. v. Canady*, 194 W.Va. 431, 436, 460 S.E.2d 677, 682 (1995) (citations omitted). Thus,

[i]n determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of

other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Syl. pt. 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979). Guided by these principles, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

▉▉▉ In its petition for writ of prohibition to this Court, the TCSWA claims that

the DOL's hearing examiner erred [6] in issuing its decision finding that the TCSWA had violated the West Virginia Prevailing Wage Act, W. Va.Code § 21–5A–1, *et seq.* by applying the prevailing wage requirements to employees of a public authority and by applying the prevailing wage requirements to a project that was not let to contract.[7]

### A. Employees of a Public Authority

First, the TCSWA contends that the hearing examiner improperly determined that the TCSWA's ten temporary employees should have been paid the prevailing wage when the Act does not require a public authority to pay its workers the prevailing wage. *Citing* W. Va.Code § 21–5A–1(7) (1961) (Repl.Vol. 2002) (defining "employees" for purposes of Act). In rendering its ruling, the hearing examiner relied upon a prior advisory opinion

---

6. Although the procedural posture of the instant proceeding is that of an original jurisdiction proceeding in prohibition, the case actually should have been brought as an appeal following the hearing examiner's final ruling insofar as the parties have not yet exhausted the administrative remedies available to them. *See* W. Va.Code § 21–5A–5 (1961) (Repl.Vol.2002) (setting forth administrative procedure for challenging determinations made in accordance with Prevailing Wage Act). *See also* Syl. pt. 7, *Expedited Transp. Sys., Inc. v. Vieweg,* 207 W.Va. 90, 529 S.E.2d 110 (2000) (" ' " 'The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.' Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association,* 143 W.Va. 674, 104 S.E.2d 320 (1958)." Syl. Pt. 1, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984).' Syl. pt. 10, *State ex rel. Miller v. Reed,* 203 W.Va. 673, 510 S.E.2d 507 (1998)."). *But see* Syl. pt. 1, *State ex rel. Board of Educ. of the County of Kanawha v. Casey,* 176 W.Va. 733, 349 S.E.2d 436 (1986) ("The doctrine of exhaustion of administrative remedies is inapplicable where resort to available procedures would be an exercise in futility."). Moreover, "prohibition ... against judges [is a] drastic and extraordinary remed[y].... As [an] extraordinary remed[y], [it is] reserved for really extraordinary causes." *Ex parte Collett,* 337 U.S. 55, 72, 69 S.Ct. 944, 953, 93 L.Ed. 1207, 1217 (1949) (internal quotations and citations omitted). *Accord State ex rel. Charles Town Gen. Hosp. v. Sanders,* 210 W.Va. 118, 122, 556 S.E.2d 85, 89 (2001);

*State ex rel. United States Fid. & Guar. Co. v. Canady,* 194 W.Va. 431, 436, 460 S.E.2d 677, 682 (1995); *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 31, 459 S.E.2d 139, 142 (1995). Nevertheless, we are permitted to exercise our original jurisdiction over matters that involve "new and important problems or issues of law of first impression." Syl. pt. 4, in part, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996). It is readily apparent by the mere existence of this case that significant confusion exists as to the proper interpretation and application to be accorded to the Prevailing Wage Act. Thus, given the convoluted history of this case to date, the repeated delays in the DOL's enforcement of the prevailing wage statutes against the TCSWA, and the futility of continuing those administrative proceedings if the hearing examiner's interpretation of the governing statutory law is erroneous, as we find that it is, we will consider this matter in the posture in which it has been presented to this Court. *See* Syl. pt. 1, in part, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979) ("[T]his Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory ... mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.").

7. The TCSWA also asserts that the hearing examiner improperly considered the legislative history of the Act. We will consider this argument in connection with our consideration of the other two errors alleged by the TCSWA.

of the West Virginia Attorney General[8] and determined that, in order to reconcile the conflicting provisions of the Prevailing Wage Act, the Act must be construed as requiring the prevailing wage to be paid to employees of public authorities unless the work performed by such employees "is for the specific purpose of making temporary or emergency repairs."[9] Before this Court, the TCSWA asserts that the hearing examiner's ruling is erroneous because it ignores the plain language of W. Va.Code § 21–5A–1(7)[10] exempting a public authority's employees from the prevailing wage requirement. The DOL[11] responds that the hearing examiner correctly reconciled the incongruous portions of the Act and properly gave effect to the express legislative purpose declared in W. Va.Code § 21–5A–2 (1961) (Repl.Vol.2002).[12]

■■■ The crux of the parties' arguments on this point is a dispute as to the proper interpretation of the applicable statutory law, specifically the statute explaining the purpose of the Act, W. Va.Code § 21–5A–2, and the statute providing definitions for the terms used in the Act, W. Va.Code § 21–5A–1. As with any matter involving the interpretation and application of statutes, we first must determine the Legislature's intent in promulgating the statutory law at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). We then examine the precise words chosen by the Legislature in adopting the statute. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)); Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). Where, however, the statutory language is not plain, its language must be construed before it can be applied: "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). *Accord* Syl. pt. 1, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

**8.** *See* 62 W. Va. Op. Atty. Gen. No. 4 (Sept. 25, 1986). For further discussion of this advisory opinion, see *infra* note 16.

**9.** This limitation, which was announced in the Attorney General's advisory opinion and adopted by the hearing examiner, refers to the language of W. Va.Code § 21–5A–1(2) (1961) (Repl.Vol. 2002) defining the term "construction." 62 W. Va. Op. Atty. Gen. No. 4, at 1. See note 27, *infra*, for the complete text of W. Va.Code § 21–5A–1(2). The "emergency repairs" limitation is also an exception to the application of the West Virginia Fairness In Competitive Bidding Act (hereinafter "Competitive Bidding Act"), W. Va.Code § 5–22–1, *et seq. See* W. Va.Code § 5–22–1(d)(3) (2000) (Repl.Vol.2002) ("Nothing in this section shall apply to: ... Emergency repairs to building components and systems. For the purpose of this subdivision, emergency repairs means repairs that if not made immediately will seriously impair the use of such building components and systems, or cause danger to those persons using such building components and systems[.]"). The above-referenced language of W. Va.Code § 5–22–1(d)(3) has been quoted from the statute in effect at the time of the events at issue herein. This statute has since been amended and is now set forth at W. Va.Code § 5–22–1(*i*)(3) (2004) (Repl.Vol.2006); the present version of the statute is substantially unchanged from the quoted text.

**10.** See text accompanying note 17, *infra*.

**11.** The arguments advanced by the Trades Council focus mainly upon the application of the Competitive Bidding Act to the facts of this case. We will address the Competitive Bidding Act in Section III.B., *infra*.

**12.** The full text of W. Va.Code § 21–5A–2 (1961) (Repl.Vol.2002) is set forth in Section III.A., *infra*.

In W. Va.Code § 21–5A–2, the Legislature has definitively stated the public policy underlying the Prevailing Wage Act:

> It is hereby declared to be the policy of the State of West Virginia that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in this State in which the construction is performed, shall be paid to all workmen employed by or on behalf of any public authority engaged in the construction of public improvements.

We previously considered this legislative purpose in *Affiliated Construction Trades Foundation v. University of West Virginia Board of Trustees,* 210 W.Va. 456, 557 S.E.2d 863 (2001) (hereinafter *"ACT Foundation"*). In *ACT Foundation,* a private entity performed construction work on behalf of the West Virginia University Foundation (hereinafter "the Foundation"). As with the instant proceeding, the prevailing wage was not paid to the workers performing said construction because the private entity believed that it was exempt from the Act.[13] And also like the case *sub judice,* a dispute arose as to whether the prevailing wage should have been paid to said workers. In finding that the Act did not apply because the Foundation was a private entity that was exempt from the prevailing wage statutes, this Court held that, "[u]nder West Virginia Code § 21–5A–2 (1961) (Repl. Vol.1996), the provisions concerning prevailing wages can only be invoked when a construction project that constitutes a public improvement and which involves workers employed by or on behalf of a public authority is involved." Syl. pt. 3, 210 W.Va. 456, 557 S.E.2d 863. The Court then went on to analyze those definitional sections of the Act pertaining to the terms "public improvement" and "public authority" in concluding

that the Foundation was exempt from the requirements of the Act. *See* Syl. pts. 4–6, *id.*

Although instructive as to the meaning of the general legislative purpose expressed in W. Va.Code § 21–5A–2 and the terms "public improvement" and "public authority," our holding in *ACT Foundation* does not resolve the specific quandary presented by the facts of the instant proceeding: reconciling the definition of "employee," which specifically exempts public authority employees from the prevailing wage requirement, with the purpose of the Act, which specifically applies the prevailing wage requirement to public authority employees. The parties to this proceeding do not dispute that the TCSWA is a "public authority" for purposes of the Act. *See* W. Va.Code § 21–5A–1(1).[14] *See also* W. Va.Code § 22C–4–3 (2000) (Repl.Vol.2005).[15] They also concede that the landfill expansion project was neither a temporary nor an emergency repair. The parties disagree, however, as to whether the Act required the TCSWA to pay the workers involved in this case the prevailing wage for the work they performed on the landfill expansion project.

▬ The DOL contends that the Act specifically *includes* a public authority's workers in its requirement that public authorities pay their workers the prevailing wage:

> It is hereby declared to be the policy of the State of West Virginia that *a wage of no less than the prevailing hourly rate of wages* for work of a similar character in the locality in this State in which the construction is performed, *shall be paid to all workmen employed by or on behalf of any public authority engaged in the construction of public improvements.*

**13.** However, unlike the case *sub judice,* the project involved in *ACT Foundation* was let to contract. The parties' arguments regarding the "let to contract" proviso will be considered *infra* at Section III.B.

**14.** W. Va.Code § 21–5A–1(1) defines a "public authority" as meaning

> any officer, board or commission or other agency of the State of West Virginia, or any political subdivision thereof, authorized by law to enter into a contract for the construction of

a public improvement, including any institution supported in whole or in part by public funds of the State of West Virginia or its political subdivisions, and this article shall apply to expenditures of such institutions made in whole or in part from such public funds.

**15.** Pursuant to W. Va.Code § 22C–4–3(a) (2000) (Repl.Vol.2005), "[o]n and after the first day of January, one thousand nine hundred eighty-nine, a new county solid waste authority is hereby created and established as a *public agency* in every county of the state...." (Emphasis added).

W. Va.Code § 21–5A–2 (1961) (Repl.Vol.2002) (emphasis added).[16] Despite this directory language requiring a public authority's workers to be paid the prevailing wage, the TCSWA asserts that it was not required to pay its workers the prevailing wage because the Act's definitional section specifically *excludes* the workers of a public authority from the definition of "employee":

*The term "employee" for the purposes of this article, shall not be construed to include*[17] *such persons as are employed or hired by the public authority on a regular or temporary basis or engaged in making temporary or emergency repairs.*

W. Va.Code § 21–5A–1(7) (1961) (Repl.Vol. 2002) (emphasis and footnote added). From these quoted statutory passages, it is apparent that these two statutes are in direct conflict and must be construed to resolve this ambiguity. *See Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) ("A statute is open to construction only where the language used requires interpretation because of ambiguity which ren-

**16.** In support of its argument, the DOL relies upon an advisory opinion issued by the West Virginia Attorney General, the reasoning of which also was adopted by the hearing examiner in rendering its decision in the underlying proceedings. 62 W. Va. Op. Atty. Gen. No. 4 (Sept. 25, 1986). The gist of this ruling is that because the Legislature enacted the Prevailing Wage Act first and because both the Prevailing Wage Act and the Competitive Bidding Act "deal with hiring and bidding practices pertaining to public construction and repair projects," the definitions of the Prevailing Wage Act may be used to give meaning to terms employed in the Competitive Bidding Act. *Id.* at 2. In this case, the DOL and its hearing examiner assert the converse: interpretations of the application of the Competitive Bidding Act should apply with equal force to interpretations of the Prevailing Wage Act. Thus, the DOL contends that the advisory opinion's conclusion regarding the application of the Competitive Bidding Act should apply with equal force to the prevailing wage issue involved in the instant proceeding. *See* 62 W. Va. Op. Atty. Gen. No. 4 at 4 (ruling that "[t]he public authority may not hire new personnel to perform ... capital improvements [the cost of which will exceed $25,000]; nor may the public authority evade the law by hiring new personnel to do the work of regular employees and transfer existing employees to make such capital improvement"). We find that this argument fails to consider the distinctions between the language of the two Acts and misapprehends the correct construction and operation of the prevailing wage statutes governing this case. Therefore, while the reasoning employed by the Attorney General in his advisory opinion shed light on the controversy then at issue and instructed the parties thereto how next to proceed, it is neither binding upon this Court nor instructive to our determination of the case *sub judice. See* Syl. pt. 2, *Hoover v. Blankenship*, 199 W.Va. 670, 487 S.E.2d 328 (1997) ("Opinions of the attorney general are not precedential or binding upon this Court. *Matter of Vandelinde*, 179 W.Va. 183, 366 S.E.2d 631 (1988)."); *State v. Wassick*, 156 W.Va. 128, 133, 191 S.E.2d 283, 287 (1972) ("Opinions of the Attorney General are not considered as precedent to be followed by this Court." (citations omitted)); *Mohr v. County Court of Cabell County*, 145 W.Va. 377,

406, 115 S.E.2d 806, 821 (1960) (Haymond, J., dissenting) ("The opinion of the attorney general ... though entitled to weight and consideration, is merely the individual official view of that high executive legal advisor and law enforcement officer of this State, and is not in any sense authority binding upon this Court."). *But see Walter v. Ritchie*, 156 W.Va. 98, 109, 191 S.E.2d 275, 282 (1972) ("Although an opinion of the attorney general is not binding upon this Court it is persuasive when it is issued rather contemporaneous with the adoption of the statute in question." (citation omitted)).

**17.** The current version of the West Virginia Code substitutes the word "conclude" for the word "include." *See* W. Va.Code § 21–5A–1(7) (1961) (Michie's Repl.Vol.2002) ("The term 'employee' for the purposes of this article, shall not be construed to *conclude* such persons as are employed or hired by the public authority on a regular or temporary basis or engaged in making temporary or emergency repairs." (emphasis added)). This alteration does not, however, reflect a legislative amendment of this language but rather seems to be the result of an editorial oversight insofar as both the original volume in which this version of this section was printed and the coordinate version of the West Virginia Code contain the word "include" and not "conclude." *See* W. Va.Code § 21–5A–1(7) (formerly codified as 1961 W.Va.Code, c. 72, art. 5A, § 2357(1)(7)) (1961) (Michie's Main Vol.1961) ("The term 'employee,' for the purposes of this article, shall not be construed to *include* such persons as are employed or hired by the public authority on a regular or temporary basis or engaged in making temporary or emergency repairs." (emphasis added)); W.Va.Code § 21–5A–1(7) (1961) (West's Main Vol.2002) ("The term 'employee' for the purposes of this article, shall not be construed to *include* such persons as are employed or hired by the public authority on a regular or temporary basis or engaged in making temporary or emergency repairs." (emphasis added)). Therefore, we will restore the statutory language to that which was originally enacted by the Legislature and quote it as containing the word "include."

ders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." (internal quotations and citation omitted)).

When two statutes address the same subject matter, we first attempt to construe the statutes in *pari materia* to give effect to the full intent and meaning of both legislative enactments. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361. Even "where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958). If, however, the two statutes simply cannot be reconciled, the language of the more specific promulgation prevails. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984). *Accord Tillis v. Wright*, 217 W.Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("[S]pecific statutory language generally takes precedence over more general statutory provisions."); *Bowers v. Wurzburg*, 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." (citations omitted)); *Daily Gazette Co., Inc. v. Caryl*, 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute when an unreconcilable conflict arises between the terms of the statutes." (citations omitted)). Viewing the two statutes at issue herein, W. Va.Code § 21–5A–2 is plainly a more general statute explaining the Legislature's overall purpose in enacting the Pre-

vailing Wage Act, while W. Va.Code § 21–5A–1(7) is clearly a more specific statute defining the term "employee" as it is used throughout the Prevailing Wage Act. As the more specific statute, W. Va.Code § 21–5A–1(7) necessarily prevails as the controlling statute in the case *sub judice*.

As we noted above, we have previously interpreted the language of W. Va.Code § 21–5A–2. We have not yet, however, had occasion to examine the meaning of W. Va. Code § 21–5A–1(7). This section, which defines the term "employee," provides that, "[t]he term 'employee' for the purposes of this article, shall not be construed to include[18] such persons as are employed or hired by the public authority on a regular or temporary basis or engaged in making temporary or emergency repairs." W. Va.Code § 21–5A–1(7) (footnote added). We find this language to be plain and in need of no further construction. This section plainly states that, for purposes of the West Virginia Prevailing Wage Act, workers who a public authority employs or hires on a regular or temporary basis are not considered to be "employees." *Id.* Further, this section also excludes from the definition of "employee" those public authority workers who are "engaged in making temporary or emergency repairs." W. Va.Code § 21–5A–1(7).

While the language of this statute is plain, its application is a bit more problematic. This definitional section, W. Va.Code § 21–5A–1(7), refers to "employees" of a public authority, while the general purpose section, W. Va.Code § 21–5A–2, references "workmen" employed by a public authority. The Act does not, however, separately define the term "workman."[19] Having carefully reviewed the entire Act, it is apparent that the Legislature intended the definition of "employee" to also give meaning to the term "workman." Aside from an isolated reference to the word "employees" in the context of defining "construction in-

18. *See supra* note 17.

19. Both "employee" and "workman" are used throughout the Act in both their singular and

plural forms. To maintain consistency between the terms, we will refer to them both singularly, unless the context requires otherwise.

dustry"[20] and use of the word "employee" in the definition of that term,[21] the words "employee" and "employees" are not used elsewhere in the Act. The terms "workman"[22] and "workmen"[23] are repeatedly referenced throughout the Act, but they are not defined therein. Thus, it is clear that the Legislature intended the definition of "employee" to apply throughout the entire article setting forth the Prevailing Wage Act and to ascribe meaning to the word "workman." *See* W. Va.Code § 21–5A–1(7) (providing definition of "[t]he term 'employee' *for the purposes of this article*" (emphasis added)). To construe the word "employee" otherwise would render it meaningless, and, in matters of statutory construction, every effort is made to give effect to each word and phrase adopted by the Legislature,[24] the presumption being that the Legislature would not have committed a futile act. In other words, "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. pt. 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars of the United States, Inc.,* 147 W.Va. 645, 129 S.E.2d 921 (1963). Accordingly, we hold that, pursuant to W. Va.Code § 21–5A–1(7) (1961) (Repl. Vol.2002), the terms "employee" and "workman," as used in the West Virginia Prevailing Wage Act, W. Va.Code § 21–5A–1, *et seq.,* do not include workers who are (1) employed or hired by a public authority on a regular basis, (2) employed or hired by a public authority on a temporary basis, (3) employed or hired by a public authority to perform temporary repairs, or (4) employed or hired by a public authority to perform emergency repairs.[25]

■ Applying W. Va.Code § 21–5A–1(7)'s definition of "employee"/"workman" to the policy declared in W. Va.Code § 21–5A–2

20. *See* W. Va.Code § 21–5A–1(5).

21. *See* W. Va.Code § 21–5A–1(7).

22. *See* W. Va.Code § 21–5A–9(b) (1961) (Repl. Vol.2002).

23. *See* W. Va.Code § 21–5A–1(3); W. Va.Code § 21–5A–2; W. Va.Code § 21–5A–3 (2001) (Repl. Vol.2002); W. Va.Code § 21–5A–7 (1961) (Repl. Vol.2002); W. Va.Code § 21–5A–8 (1961) (Repl. Vol.2002); W. Va.Code § 21–5A–9(c).

24. *See* Syl. pt. 3, *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999) ("A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute."); Syl. pt. 2, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975) ("In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.").

25. This holding is consistent with the common, ordinary meaning of "workman." *See* Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959) ("Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use."); Syl. pt. 1, *Miners in Gen. Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941) ("In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used."), *overruled on other grounds by Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982). *See also* Ballentine's Law Dictionary 1377 (3d ed.1969) (stating that "workman" means "[a] working man. A man employed for wages in labor[.]"); 3 Bouvier's Law Dictionary 3488 (Rawle's Revision repr. 1984) (interpreting "workman" as "[o]ne who labors; one who is employed to work for another"); XX The Oxford English Dictionary 552 (2d ed. reprinted (with corrections) 1991) (construing "workman" as "[a] man engaged to do work"); Random House Webster's Unabridged Dictionary 2189 (2d ed.1998) (defining "workman" as "a man employed or skilled in some form of manual, mechanical, or industrial work"). *But see West Virginia Coal & Coke Corp. v. State Comp. Comm'r,* 116 W.Va. 701, 704, 182 S.E. 826, 828 (1935) (considering distinction between "employee" and "workman" in context of workers' compensation statutes and commenting that " '[e]mployee,' the term used in our statute (Code 1931, 23–2–1), is a broader term than 'workman' and is applicable to all persons in the service of the employer" (citation omitted)). *Cf. Voss v. Ramco, Inc.,* 325 S.C. 560, 566, 482 S.E.2d 582, 585 (S.C.Ct.App.1997) (remarking, for purposes of workers' compensation statutes, that " 'workman' is synonymous with 'employee' " (citation omitted)). Our recognition of the interchangeability of the terms "employee" and "workman" is consistent with our recent commentary concerning the "less than precise … choice of wording" employed by the Legislature in its promulgation of statutes concerning cemeteries. *See In re Petition for Appointment of Trs. for Woodlawn Cemetery,* 222 W.Va. 351, 357 n.8, 664 S.E.2d 692, 698 n. 8 (2008).

requires further statutory construction in order to give meaning to the legislative intent evidenced therein. As it is currently written, and as it was interpreted in *ACT Foundation*, W. Va.Code § 21–5A–2 requires the prevailing wage to be paid to "all workmen employed *by or on behalf of* any public authority" when such workers are "engaged in the construction of public improvements." W. Va.Code § 21–5A–2 (emphasis added). However, the definition of "employee"/"workman" specifically excludes from its scope those workers employed or hired *by* a public authority. W. Va.Code § 21–5A–1(7). It is not possible, then, to require that the prevailing wage be paid to persons employed *by* a public authority because the more specific definitional section has specifically excluded such workers from the definition of "employee." Thus, the only construction that will give meaning and effect to both the definitional section and the policy declaration section necessarily requires us to limit the scope and application of the purpose of the prevailing wage requirement. Any other construction would create an absurd result, which we are bound to avoid. *See* Syl. pt. 2, *Richards v. Harman*, 217 W.Va. 206, 617 S.E.2d 556 (2005) (" 'Where a particular construction of a statute will result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syllabus Point 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938)."); Syl. pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002) (" 'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. *It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.*' Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925)." (emphasis added)). Therefore, we hold that W. Va.Code § 21–5A–2 (1961) (Repl.Vol.2002) requires the prevailing wage to be paid to all workmen who are employed "on behalf of any public authority" and who are "engaged in the construction of public improvements." To the extent that our prior holding in Syllabus

point 3 of *Affiliated Construction Trades Foundation v. University of West Virginia Board of Trustees*, 210 W.Va. 456, 557 S.E.2d 863 (2001), is inconsistent with this holding, it is expressly modified.

Having ascertained the proper meaning and application of the governing statutory law, we must now apply these statutes to the facts of the case *sub judice*. During the proceedings below, the hearing examiner determined that the TCSWA was required to pay the temporary workers at issue herein the prevailing wage for the work they had performed on the TCSWA's landfill expansion project. Because we disagree with the construction ascribed to the Act by the hearing examiner, we reach a contrary conclusion. As we noted above, W. Va.Code § 21–5A–1(7) does not include within the definition of "employees" or "workmen" to whom the Act applies those persons "employed or hired by the public authority on a . . . temporary basis." Neither does W. Va. Code § 21–5A–2 require that the prevailing wage be paid to persons employed by a public authority. Therefore, it is apparent that the TCSWA was not required to pay the prevailing wage to the temporary workers it hired to perform excavation work on its landfill expansion project. Accordingly, we grant the writ of prohibition requested by the TCSWA.

### B. Project Not Let to Contract

The TCSWA also contends that the hearing examiner erred by requiring it to pay the prevailing wage to temporary employees who were performing work on a project not let to contract when the Act states that its application is limited to construction of public improvement projects that have been "let to contract." W. Va.Code § 21–5A–1(2); W. Va.Code § 21–5A–1(4). In deciding this matter below, the hearing examiner acknowledged that various parts of the Act refer to construction and public improvement projects that have been let to contract, but did not directly address the fact that the subject excavation work on the landfill expansion project had not been let to contract, focusing instead on the Act's definition of and

application to a public authority's temporary employees.

Before this Court, the TCSWA states that because the Act applies to "the construction of public improvements" [26] and because both the terms "construction" and "public improvement" speak in terms of projects that have been "let to contract," [27] the Act does not apply to the excavation component [28] of the landfill expansion project at issue in this case because that work was not let to contract. In further support of its argument, the TCSWA argues that the Act repeatedly

26. *See* Section III.A., supra, for the text of W. Va.Code § 21–5A–2.

27. W. Va.Code § 21–5A–1(2) states

[t]he term "construction," as used in this article, shall mean any construction, reconstruction, improvement, enlargement, painting, decorating, or repair of any public improvement *let to contract.* The term "construction" shall not be construed to include temporary or emergency repairs.

(Emphasis added). Similarly, W. Va.Code § 21–5A–1(4) provides

[t]he term "public improvement," as used in this article, shall include all buildings, roads, highways, bridges, streets, alleys, sewers, ditches, sewage disposal plants, waterworks, airports, and all other structures *upon which construction may be let to contract* by the State of West Virginia or any political subdivision thereof.

(Emphasis added).

28. The TCSWA did let to contract work on the landfill expansion project that occurred after the initial excavation work performed by the workers involved in this proceeding. *See supra* note 2.

29. *Citing* W. Va.Code § 21–5A–3 (requiring that "these rates [the prevailing wage] shall prevail as the minimum wage rate on all public improvements *on which bids are asked* " (emphasis added by TCSWA)); W. Va.Code § 21–5A–6 (1961) (Repl.Vol.2002) (requiring inclusion of prevailing wage information in contract for construction of public improvement where such project was let to contract); W. Va.Code § 21–5A–7 (requiring contractors and subcontractors to post prevailing wage information); W. Va.Code § 21–5A–8 (requiring contractor and subcontractor to have wage records available for inspection by DOL and "the public authority which *let the contract* " (emphasis added)); W. Va.Code § 21–5A–9(a) (allowing for imposition of penalties against contractor or subcontractor who "wilfully and knowingly violates" Prevailing Wage Act); W. Va.Code § 21–5A–9(b) (creating cause of action

refers to projects that have been "let to contract" which indicates that the Act does not require the prevailing wage to be paid with respect to construction work that was *not* let to contract.[29] The TCSWA additionally suggests that the Act, itself, specifically states that it applies only to "contracts for construction on public improvements let after the effective date of this article [June 9, 1961] . . . ." W. Va.Code § 21–5A–10 [30] (1961) (Repl.Vol.2002).[31]

Responding to the TCSWA's arguments on this point, both the DOL and the Trades

by "[a]ny skilled laborer, workman or mechanic who is engaged in construction on a public improvement *let to contract* " to recover difference between actual wages and prevailing wage, penalty, and attorney's fees (emphasis added)).

30. In its entirety, W. Va.Code § 21–5A–10 (1961) (Repl.Vol.2002) provides that

[t]his article shall apply to contracts for construction on public improvements let after the effective date of this article [June 9, 1961], and to construction on public improvements for which there has been determined the fair minimum wage rates as provided in this article, and such determination has not been appealed from as may be provided by this article.

31. The TCSWA also asserts that the DOL's own regulations contemplate that the prevailing wage applies only to projects that have been let to contract. For example, the scope of the regulations interpreting the Act state

*[e]very contract* to which the State of West Virginia, or any political subdivision thereof, or any authority created by the Legislature of the State of West Virginia, including any officer, board or commission or agency of the State of West Virginia, is a party, for construction, reconstruction, demolition, improvement, enlargement, painting, decoration, alteration and/or repair work (other than temporary or emergency repairs) *which requires or involves the employment by any contractor or subcontractor* of laborers, mechanics, skilled and semiskilled laborers and apprentices, in the performances of services directly upon the public work project must include in its specifications a provision stating the Fair Minimum Wage Rates as determined by the Commissioner of Labor, which shall be paid for each craft or classification of all workmen *needed to perform the contract* in the locality in which the public work is performed.

W. Va.C.S.R. § 42–7–1.1 (1982) (emphasis added by TCSWA), *Citing also* W. Va.C.S.R. § 42–7–3 (1982) (setting forth prevailing wage terms to be included in contract); W. Va.C.S.R. § 42–7–4

Council [32] suggest, *and raise for the first time in the course of this case,* that although the TCSWA did not let to contract the work involved herein, it was required to do so by the West Virginia Fairness In Competitive Bidding Act (hereinafter "Competitive Bidding Act"), W. Va.Code § 5–22–1, *et seq.,* which details the criteria for determining whether projects are required to be let to contract.[33] Therefore, they argue, that because the TCSWA violated the Competitive Bidding Act by not letting to contract the excavation work performed by the temporary workers, it should not be allowed to escape its responsibilities under the Prevailing Wage Act, which would have applied but for the TCSWA's violation of the Competitive Bidding Act.

We note at the outset that we have definitively determined, in the preceding section of this opinion, that the Prevailing Wage Act does not apply to the facts of this case and that the TCSWA is not required to pay the prevailing wage to temporary workers it hired to perform excavation work on its landfill expansion project. Thus, further consideration of the "let to contract" issue is not necessary for our decision of this case. We agree, however, that in order to determine the "let to contract" issue, it is also necessary to consider the requirements of the Competitive Bidding Act and whether the TCSWA complied with its provisions in hiring the aforementioned workers. Nevertheless, several factors preclude us from conducting such an inquiry in this case's present procedural posture.

First, the intimation that the TCSWA has violated the Competitive Bidding Act by not letting to contract the excavation work done on its landfill expansion project was not raised before or addressed by the hearing examiner. While we recognize that the instant matter is an original jurisdiction proceeding before this Court, we nevertheless must have a record upon which to base our decision of issues raised in this case. Insofar as the record in this case essentially consists of the record made before the DOL's hearing examiner, it is silent as to the parties' arguments on the Competitive Bidding issue and lacks the factual evidence necessary for us to determine this issue.

Moreover, because the question of the TCSWA's alleged violation of the Competitive Bidding Act is being raised for the first time before this tribunal, no administrative proceedings have been had on this matter. In this regard, the DOL represents that it is not responsible for enforcing the Competitive Bidding Act and that the entity that is charged with such enforcement is the Department of Administration;[34] thus, the DOL's hearing examiner did not have jurisdiction to consider this issue. However, there is no indication that the Department of Administration has been notified of the allegations made regarding the TCSWA's actions regarding its landfill expansion project or that the Department of Administration has investigated the DOL's allegations, attempted to enforce the provisions of the Competitive Bidding Act against the TCSWA, or otherwise pursued this matter. Without having first litigated this matter through the appropriate administrative chan-

(1982) (enumerating duties of public authority that has let work to contract).

**32.** The Association's arguments set forth in its Amicus brief are virtually identical to those advanced by the Trades Council.

**33.** W. Va.Code § 5–22–1(b) requires that the State of West Virginia or any of its subdivisions must "solicit competitive bids for every construction project exceeding twenty-five thousand dollars in total cost." Exceptions to this requirement include (1) work performed by "regular full-time employees of the state or its subdivisions"; (2) work performed by students in vocational education programs; (3) emergency repairs; and (4) work performed by volunteers.

W. Va.Code §§ 5–22–1(d)(1–4) (2000) (Repl.Vol. 2002) (recodified at W. Va.Code §§ 5–22–1(*i*)(1–4) (2004) (Repl.Vol.2006)). *See supra* note 9.

**34.** *See* W. Va.Code § 5A–3–3(2) (1990) (Repl.Vol. 2006) (directing Director of Purchasing to "[e]nsure that the purchase of or contract for commodities and printing shall be based, whenever possible, on *competitive bid*" (emphasis added)). *See also* W. Va.Code § 5–22–1(f) (2004) (Repl. Vol.2006) (prohibiting violation of requirements of Competitive Bidding Act and imposing penalties therefor in accordance with W. Va.Code § 5A–3–29); W. Va.Code § 5A–3–29 (1990) (Repl.Vol.2006) (defining penalties for violation of procedures required of Purchasing Division of Department of Administration).

nels, consideration thereof by this Court is premature.

 Finally, while the hearing examiner alluded to the Competitive Bidding Act in his decision in this case, such references were made with respect to the Attorney General's advisory opinion upon which he relied in interpreting the scope of the Prevailing Wage Act and comparisons between the wording and operation of the two acts. No mention was made of the possibility that the TCSWA might have violated the Competitive Bidding Act and, in fact, such allegations were first raised in DOL's Response Brief and the subsequent Intervenor and Amicus Briefs filed with this Court in the instant proceeding. All of these pleadings were filed *after* the TCSWA had filed its initial Petition for Writ of Prohibition and, in light of the nature of this proceeding, the TCSWA was precluded from filing a Reply Brief to respond to these allegations and arguments.[35] Therefore, the only opportunity that the TCSWA had to address the competitive bidding issues raised by its opponents was during its oral argument before this Court. It was not permitted to reply in writing, and it did not have an opportunity to provide additional evidentiary documentation in support of its position. Thus, because the TCSWA has not had a full and fair opportunity to thoroughly address this issue, further consideration of it at this time is premature and raises concerns regarding the process that is due the TCSWA. *See, e.g.,* Syl. pt. 2, *Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259 (1978) ("Under procedural due process concepts a hearing must be appropriate to the nature of the case and from this flows the principle that the State cannot preclude the right to litigate an issue central to a statutory violation or deprivation of a property interest"); Syl. pt. 1, *Sisler v. Hawkins,* 158 W.Va. 1034, 217 S.E.2d 60 (1975) (" 'The due process of law guaranteed by the State and Federal Constitutions, when applied to pro-

cedure in the courts of the land, requires both notice and the right to be heard.' Point 2, Syllabus, *Simpson v. Stanton,* 119 W.Va. 235[, 193 S.E. 64 (1937)].").

In closing, we wish to make it abundantly clear that we do not condone the evasion of the requirements of one statute by the violation of a coordinating statute. Whether such shenanigans happened in this case remains to be seen and cannot be determined upon the record presently before us. Be that as it may, we decline further consideration of the "let to contract" issue having already determined that the TCSWA was not required to pay its temporary employees the prevailing wage for the work they performed on the TCSWA's landfill expansion project.

## IV.

## CONCLUSION

For the foregoing reasons, the writ of prohibition requested by the Tucker County Solid Waste Authority is hereby granted, and we prohibit the Division of Labor from enforcing its hearing examiner's June 29, 2007, decision and from conducting further proceedings in this matter.

Writ Granted.

Justices STARCHER and ALBRIGHT dissent and reserve the right to file dissenting opinions.

ALBRIGHT, Justice, dissenting:

I dissent from the majority opinion in this case for the simple reason that it disregards the intent of the Legislature as to what public works projects are subject to a prevailing wage rate. The substantial loophole thereby created invites untoward mischief.

Unquestionably, the various provisions of the state's prevailing wage act (W.Va.Code §§ 21-5A-1 to-11)[1] under discussion are not

---

**35.** Although the TCSWA moved to file a Reply Brief in this case, its motion was refused insofar as the Rules of Appellate Procedure do not permit a petitioner in an original jurisdiction proceeding to file a reply brief *See generally* W. Va. R.App. P. 14 (setting forth rules pertaining to original jurisdiction proceedings).

**1.** The federal counterpart to the state's prevailing wage act is the Davis–Bacon Act. As explained by one authority, the Davis–Bacon Act "is designed to protect local wage standards ... and to give local labor and the local contractor a fair opportunity to participate in federal building programs." 51B C.J.S. *Labor Relations* § 1103 (2003).

the model of clarity. However, the precise policy statement set forth in West Virginia Code § 21–5A–2 is quite clear regarding the legislative intent for enacting the statutory scheme. This section plainly and concisely states:

It is hereby declared to be the policy of the State of West Virginia that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in this State in which the construction is performed, shall be paid to all workmen employed by or on behalf of any public authority engaged in the construction of public improvements.

The majority blindly adhered to Appellant's position—ignoring the expressed legislative intent underpinning this entire Article of the Code—in order to conclude that the Legislature really didn't mean that people employed *by* public authorities should ever be paid the prevailing wage rate unless a completely new construction project is undertaken.

In addition to offending the legislatively declared policy, the majority does not consider or appreciate the significance of the distinction between public improvements, including expansions, versus repairs. Such an oversight will no doubt promote spurious practices. Following the majority opinion, a public body can argue that any work done on an existing facility by people it hires as temporary workers is outside of the scope of the prevailing wage statute. As an example of how this promotes sham practices, consider summer hires at schools. The school district could hire school service personnel and pay them less than the prevailing wage rate during the summer for any work on an existing school whether that work entails painting classroom walls or building a new wing on a school. In the instant case, it was undisputed that the expansion of the landfill was an addition or improvement to an existing public project rather than simply a repair. Therefore, this project should have been subject to the provisions of the prevailing wage act. By essentially excluding expansion projects from the reach of the statute, the majority has succeeded in eviscerating the prevailing wage statute because expansion projects likely comprise 75–80% of public works projects.

Perhaps the majority opinion represents the most vigorous assault on this state's Davis–Bacon Act in nearly half a century.

The problem with the majority opinion is underlined by the inclusion in it of a new syllabus point eight, which reads as follows:

Pursuant to W. Va.Code § 21–5A–1(7) (1961) (Repl.Vol.2002), the terms "employee" and "workman," as used in the West Virginia Prevailing Wage Act, W. Va.Code § 21–5A–1, *et seq.,* do not include workers who are (1) employed or hired by a public authority on a regular basis, (2) employed or hired by a public authority on a temporary basis, (3) employed or hired by a public authority to perform temporary repairs, or (4) employed or hired by a public authority to perform emergency repairs.

By failing to exclude work on public "improvements" from the sweeping language of the new syllabus point, the majority has added to the difficulty of interpreting and applying the prevailing wage statute, opening the possibility that certain public agencies will routinely seek to avoid the requirements of the statute by treating all persons engaged in the construction of such public "improvements" as "temporary employees."

This Court has repeatedly and frequently recognized that when faced with matters of statutory construction, courts are bound to first determine what the Legislature intended in enacting the statute because "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). The constitutional principle of separation of powers dictates that such deference be paid to legislative pronouncements. Despite this time-honored approach to statutory construction and deference to legislative prerogative, the majority has chosen in this case to supplant its policy for that expressed by the Legislature in a fashion which potentially renders the prevailing wage statute inapplicable to a large number of public works projects. I certainly cannot agree with this course and respectfully dissent.

I am authorized to state that Justice STARCHER joins in this dissent.

STARCHER, J., dissenting:

(Filed July 17, 2008)

As the majority opinion makes clear, the Prevailing Wage Act, *W. Va. Code*, 21–5A–1, *et seq.*, contains confusing and contradictory language. In fact, the Act urgently needs legislative attention and repair to correct these defects. Until those corrections are made, government agencies and courts are obliged to do their best to interpret and apply the statute to the factual situation presented by a given case. *Cf. Hinchman v. Gillette*, 217 W.Va. 378, 386, 618 S.E.2d 387, 395 (2005); *Harmon v. Fayette County Bd. of Educ.*, 205 W.Va. 125, 136, 516 S.E.2d 748, 759 (1999); *Rogers v. City of South Charleston*, 163 W.Va. 285, 304, 256 S.E.2d 557, 568 (1979) (Neely, J., dissenting); *see generally* Guido Calabresi, "A Common Law for the Age of Statutes," Harvard University Press 1982.

A court's polar star in undertaking such a task must be to follow the legislative intent whenever possible. "In the interpretation of a statute, the legislative intention is the controlling factor[.]" *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 144, 107 S.E.2d 353, 358 (1959).

The legislative intent in enacting the Prevailing Wage Act could not be more clear. It is to require public authorities to pay "prevailing wages" when constructing public improvements, *whether the authority is using private contractors' employees or persons directly employed by the public authority.* As *W. Va. Code*, 21–5A–2 [1961] states:

> It is hereby declared to be the policy of the State of West Virginia that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in this State in which the construction is performed, shall be paid to *all* workmen *employed by* or on behalf of *any public authority* engaged in the construction of public improvements.

(Emphasis added).

The majority opinion, however, ignores the above-quoted legislative intent, and reads the statute as categorically excluding from its protection those workers who are constructing public improvements, and who are employed to do so by a public authority. The majority thus reaches a result that is directly contrary to the clearly stated legislative intent.

The majority opinion relies on the definition of "employee" at *W. Va. Code*, 21–5A–1(7) [1961]. But this definition can also be read as simply excluding from the Act's protections all workers who are engaged in temporary repair jobs. Admittedly, this is a slightly strained reading; but a strained reading is preferable to disregarding the clearly-stated legislative intent.

It is notable that the Prevailing Wage Act contains other language evidencing a legislative intent that public employees who are constructing public improvements should be paid prevailing wages. *W. Va. Code*, 21–5A–8 [1961] says that "[t]he contractor and each subcontractor *or the officer of the public authority* in charge of the construction of a public improvement shall keep an accurate record showing the names and occupations of all such skilled laborers, workmen, and mechanics *employed by them*, in connection with the construction on the public improvement. . . ." Clearly, in this instance the statute contemplates covering employees of the public authority.

I would adhere to the stated legislative intent: that workers constructing public improvements are entitled to prevailing wages, no matter who employs them.

If the Legislature wants to allow public employees to construct public improvements without being paid prevailing wages, then the Legislature can certainly say so. But they have not. Rather, the Legislature has made a commendable effort to help insure that *all* working people in West Virginia will earn a decent wage when constructing public improvements.

The majority opinion defies the legislative intent and denies that decent wage to an important class of workers, West Virginia's public employees. I dissent to this improper, unfair, and mean-spirited result. I would deny the requested writ of prohibition.[1]

1. I encourage the respondents to bring a declaratory judgment action on the issue of whether this project should have been bid out in the first place. That issue is not decided by this Court's opinion and it needs to be resolved to avoid future similar situations.