IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1306

_____

FILED

April 11, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE of WEST VIRGINIA,
Plaintiff Below, Respondent

v.

JOHN J. MOFFIT,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Ohio County
The Honorable James P. Mazzone, Judge
Criminal Action No. 11-F-18

AFFIRMED

_____

Submitted: March 27, 2013
Filed: April 11, 2013

Duane C. Rosenlieb, Jr., Esq.                    Patrick Morrisey
Richard H. Lorensen, Esq.                        Attorney General
West Virginia Public Defender Services           Thomas W. Rodd, Esq.
Charleston, West Virginia                        Assistant Attorney General
Counsel for the Petitioner                       Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      The Legislature's intent in promulgating *W.Va. Code* § 61-4-3 [1931] was to protect the citizens of this State from being victimized by fraudulent conduct.

2.      "It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice.  It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity."  Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

3.      A "note" as that term is used in *W.Va. Code* § 61-4-3 [1931] includes Federal Reserve notes issued by the Federal Reserve System as authorized by 12 U.S.C. § 411 [1934].

4.      A Federal Reserve note issued  by the Federal Reserve System is a note of a "banking institution" as that term is used in *W.Va. Code* § 61-4-3 [1931].

5.      A "forged bank note" as that term is used in *W.Va. Code* § 61-4-6 [1923] includes Federal Reserve notes issued by the Federal Reserve System as authorized by 12 U.S.C. § 411 [1934].

KETCHUM, JUSTICE:

The defendant, John J. Moffit, was convicted by a West Virginia jury of uttering one Federal Reserve note and of possession with intent to utter eight counterfeit Federal Reserve notes. In common language, these "notes" are often referred to as United States paper currency or "twenty-dollar bills."[1] The defendant contends that his conduct was not prohibited by West Virginia law. Having fully considered the record, and the parties' briefs and arguments, the defendant's convictions and sentences are affirmed.

## I. Factual Background

On January 18, 2010, the defendant and his girlfriend placed a drive-through order at a Kentucky Fried Chicken ("KFC") in Wheeling, West Virginia. The defendant handed his girlfriend a twenty-dollar bill, and she gave it to a KFC employee working the drive-through window. The employee thought that the twenty-dollar bill was counterfeit and tested it with a counterfeit detection pen. This test indicated that the bill was counterfeit. The manager then called 911 and requested police assistance.

Within minutes, Sergeant Jeffrey Griffith of the Wheeling Police Department arrived at the KFC. Sergeant Griffith asked the defendant if he had any additional paper

---

[1]The Federal Reserve Bank issues Federal Reserve notes that are commonly referred to as U.S. paper currency, money, or bills.

1

currency with him. The defendant produced thirteen twenty-dollar bills. Sergeant Griffith

checked this currency with a counterfeiting pen and determined that none of the bills were

counterfeit. After obtaining the defendant's consent, Sergeant Griffith searched the

defendant's vehicle. In the glove compartment Sergeant Griffith found a WesBanco bank

envelope containing eight twenty-dollar bills. All eight of these bills were determined to be

counterfeit. Sergeant Griffith testified that each of the eight counterfeit bills in the

WesBanco envelope had the same serial number as the counterfeit bill given to the KFC

employee. In addition, the serial number on one of the valid twenty-dollar bills held by the

defendant matched the serial number on each of the counterfeit bills.

The defendant was arrested and subsequently indicted for one felony count of

uttering a counterfeit note or bill in violation of *W.Va. Code* § 61-4-3 [1931], and one

misdemeanor count of possession with intent to utter eight forged bank notes in violation of

*W.Va. Code* § 61-4-6 [1931]. On June 28, 2011, the case proceeded to a jury trial. The jury

returned verdicts finding the defendant guilty of both offenses. Thereafter, the trial court

sentenced the defendant to a term of not less than two nor more than ten years imprisonment

on the felony uttering offense, and twelve months in the Northern Regional Jail for the

misdemeanor possession with intent to utter offense. The trial court ordered that both

sentences be served concurrently.

The defendant contends that the trial court erred when it ruled that *W.Va. Code*

§ 61-4-3 prohibits the counterfeiting of United States paper currency, and ruled that the term

2

"forged bank notes" as used in *W.Va. Code* § 61-4-6 includes forged United States paper currency. The defendant argues that these statutes only refer to notes, bills and coins of private banks, and not the paper currency of the United States. The defendant says that the

> West Virginia counterfeit statute was originally drafted by the General Assembly of the Commonwealth of Virginia and included in the Code of Virginia of 1849. There was no valid Federal (national) paper currency in the United States after President Andrew Jackson refused to charter the Second Bank of the United States in 1832.
>
> In 1849 the value of currency was based upon the precious metal (gold or silver) contained in the coin. Bills and notes of various state and private banks were redeemable in coin. Statutes referring to such state and private bank notes and bills recognize that they are not money, legal tender or United States paper currency.
>
> Unlike the Commonwealth of Virginia, West Virginia never amended its counterfeiting statute to cover United States paper currency that is current by law or usage, legal tender or money. In the present case [the defendant] was charged with uttering one counterfeit Federal Reserve Note . . . and possessing eight others. He was not charged with anything having to do with state or private bank notes. Because [*W.Va. Code* § 61-4-3 [1931]] does not make any provision for money in the form of United States paper currency either directly or indirectly, [the defendant] must be acquitted of the charges.

## II. Standard of Review

The defendant appeals the trial court's denial of his motion for judgment of acquittal and the trial court's interpretation of *W.Va. Code* § 61-4-3 and *W.Va. Code* § 61-4-6. Because these issues involve questions of law and statutory interpretation/construction,

3

the standard of review set forth in Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), will guide our review: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."

## III. Discussion

### A. Uttering Counterfeit Federal Reserve Notes

*West Virginia Code* § 61-4-3 [1931], provides:

> If any person forge any coin, current by law or usage in this State, or any note or bill of a banking institution, or fraudulently make any base coin, or a note or bill purporting to be the note or bill of a banking institution, when such banking institution does not exist; or utter or attempt to employ as true, or sell, exchange or deliver, or offer to sell, exchange or deliver, or receive on sale, exchange, or delivery, with intent to utter or employ or to have the same uttered or employed as true, any such false, forged, or base coin, note or bill, knowing it to be so, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than two nor more than ten years.

As we made clear in Syllabus Point 1 of *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974), "[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." In order to determine whether this standard has been met, we begin our review with a plain reading of the statute to determine the Legislature's intent. *See State ex rel. Tucker County Solid Waste Authority v.*

4

*West Virginia*, 222 W.Va. 588, 595, 668 S.E.2d 217, 224 (2008) ("As with any matter involving the interpretation and application of statutes, we first must determine the Legislature's intent in promulgating the statutory law at issue."). *See also* Syllabus Point 14, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907) ("That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.").

We have not previously considered the legislative intent of *W.Va. Code* § 61-4-3. Initially, we note that *W.Va. Code* § 61-4-3 is directly traceable to the Code of Virginia. Following West Virginia's achieving statehood, our Legislature adopted Virginia's counterfeiting statute in 1868. Given this shared history, we have considered decisions of the Supreme Court of Virginia which have construed its counterfeiting statutes. We find one early case to be of particular interest in ascertaining legislative intent. In *Hendrick v. Commonwealth*, 32 Va. 707 (1834), the Court rejected the defendant's arguments that it was not a violation of Virginia law to counterfeit a bank check drawn against the Bank of the United States. In rejecting the argument the Virginia Supreme Court said:

> The statute of Virginia for punishing thefts and forgeries . . . was not enacted to protect the bank of the U. States; it was made to protect the citizens of this commonwealth against the thefts and forgeries therein mentioned, and to punish the offenders. It recognizes the existence of the bank of the U. States, de facto, whether it was created constitutionally or not.

32 Va. at 712.

5

More than a century later, in *Bartkus v. Illinois*, 359 U.S. 121 (1959), the United States Supreme Court relied on similar reasoning to conclude that both the state and federal government had reason to prosecute a defendant for counterfeiting the currency of the United States. As the Supreme Court said, in counterfeiting cases "both the Federal and State Governments retained the power to impose criminal sanctions, the United States because of its interest in protecting the purity of its currency, the States because of their interest in protecting their citizens against fraud." 359 U.S. at 129.

While the Virginia counterfeiting statute discussed in *Hendrick* was amended twice before West Virginia attained statehood in 1863, there is no indication that Virginia's legislative intent "to protect the citizens of [the] commonwealth against . . . thefts and forgeries," 32 Va. at 712, changed in those amendments. In *Jett v. Commonwealth*, 59 Va. 933 (1867), the Virginia Supreme Court construed the intent of its 1860 counterfeiting statute (which is nearly identical to our present statute codified at *W.Va. Code* § 61-4-3). The defendant in *Jett* had been convicted of uttering "a certain false and forged note, commonly called a bank note or national currency" purportedly issued by "the Fourth National Bank of Philadelphia." 59 Va. at 933. On appeal, Jett argued that the National Banking Act of 1864, under which a national currency was to be developed, preempted state counterfeiting prosecutions of offenses against that currency. The Court, noting that counterfeiting "is simply a cheat practiced or attempted by one citizen of Virginia upon another," 59 Va. at 949, rejected Jett's argument and held that Virginia's counterfeiting laws were "in entire harmony

6

with the act of Congress, and seeks, though for different reasons and in pursuance of a different policy, to effect the same object, to wit, the suppression of counterfeits." 59 Va. at 951.

The 1860 version of Virginia's counterfeiting statute, construed in *Jett*, was adopted by our Legislature in 1868 (omitting only a reference to "free person" contained in the Virginia counterpart). Since its enactment in 1868, *W.Va. Code* § 61-4-3 has been slightly amended on only one occasion. Significantly, this amendment was in 1923 and *after* creation of the Federal Reserve System.[2]

Based on our review, we do not see any indication that our Legislature intended a purpose for *W.Va. Code* § 61-4-3 that was any different from that noted in *Hendrick* and *Jett*. Had the Legislature intended a different purpose it would have made that clear. We agree with the statement of legislative intent that was succinctly given by the court in *Hendrick* and reaffirmed in *Jett*. We therefore hold that the Legislature's intent in promulgating *W.Va. Code* § 61-4-3 [1931] was to protect the citizens of this State from being victimized by fraudulent conduct.

While we have determined the Legislature intended to protect West Virginians from fraud, two issues of first impression relevant to *W.Va. Code*, § 61-4-3 remain: 1)

---

[2]We recognize, however, that the current version of *W.Va. Code* § 61-4-3 dates to the 1931 *Official Code of West Virginia* where a Revisers' Note appended to *W.Va. Code* § 61-4-3 provides that "[t]he term 'banking institution' is used in lieu of 'banking company' to conform to art. 4, c. 31" of the *Official Code of West Virginia*.

whether a "note," as that term is used in the statute, includes Federal Reserve notes issued by the Federal Reserve System as authorized by 12 U.S.C.§ 411 [1934]; and 2) whether a Federal Reserve note, issued by the Federal Reserve System, is a note of a "banking institution" as that term is used in the statute.

*West Virginia Code* 61-4-1 to -8, relating to "Forgery and Crimes against the Currency," does not define the terms "note" and "banking institution." In such situations this Court has held that "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syllabus Point 4, *State v. Veterans Of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959). In order to give regard for their general and proper use, we must consider the meaning of the terms "note" and "banking institution" within the statutory framework that they appear, which in this instance is in a penal counterfeiting statute.

As the defendant observes in his historical summary of the monetary system of the United States, there was a point in our history where it was commonplace for private banks to create and issue "notes" that could be used in commerce as currency and otherwise exchanged for goods and services of value. Undoubtedly, during this era it was the intent of the Legislature to proscribe the counterfeiting of those "notes" in order that our economy not be damaged, or our citizens victimized by being paid for goods or services with a forged instrument having no value. However, in 1913, the practice of banking institutions creating and issuing their own bank "notes" (*i.e.*, currency) began to come to an end.

8

The Federal Reserve System was created by the Federal Reserve Act of December 23, 1913. *See* 12 U.S.C. §§ 221 to 522. Presently there are twelve regional Federal Reserve Banks located throughout the United States. Each of these Reserve Banks are "responsible for a particular geographic area or district of the United States. Each Reserve District is identified by a number and a letter." Board of Governors of the Federal Reserve System, *The Federal Reserve System: Purposes & Functions* 6 (9th Ed. 2005). *See also* 12 U.S.C 222.[3]

In our modern banking era, the "notes" used by our state "banking institutions" include[4] Federal Reserve notes issued by Federal Reserve Banks:

> Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

---

[3]12 U.S.C. § 222, provides, in part, that "[t]he continental United States, excluding Alaska, shall be divided into not less than eight nor more than twelve districts. . . . Such districts shall be known as Federal reserve districts and may be designated by number."

[4]We expressly recognize, by the use of the word "include," that banking institutions have other forms of negotiable instruments that are capable of being considered a "note." Accordingly, nothing in this Opinion should be construed to limit the definition of "note," as that term is used in *W.Va. Code* § 61-4-3 to be exclusive to a Federal Reserve note.

12 U.S.C.§ 411. Each Federal Reserve note has markings indicating which Reserve Bank authorized its issuance. 12 U.S.C. § 413.[5] The counterfeit twenty-dollar bills in defendant's case have markings which designate the issuing bank as the Federal Reserve Bank of Atlanta, Georgia, located in the Sixth District of the Federal Reserve System.

Our Legislature amended *W.Va. Code* § 61-4-3 in 1923, *after* passage of the Federal Reserve Act in 1913. If the Legislature did not intend for the term "note" or "banking institution" as those terms are used in *W.Va. Code* § 61-4-3, to include Federal Reserve notes, it would have expressly excluded them as part of the 1923 amendments. For that matter, the Legislature could have done so at any time during the one hundred years since the Federal Reserve Act was first enacted, but it has not.

This Court is not going to give the tortured interpretation of *W.Va. Code* § 61-4-3 [1931] sought by the defendant. We are mindful that

> [i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925). *See also* Syllabus Point 2, *Conseco Finance Servicing Corporation v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002).

---

[5]12 U.S.C. § 413 provides, in part, that "Federal Reserve notes shall bear upon their faces a distinctive letter and serial number which shall be assigned by the Board of Governors of the Federal Reserve System to each Federal Reserve bank."

Were we to accept the defendant's argument that *W.Va. Code* § 61-4-3 does not explicitly prohibit the counterfeiting of United States paper currency, we would be rendering a mandate contrary to the clear and unambiguous legislative intent to protect the citizens of this State from being victimized by the forgeries of coins, notes and bills used in our local commerce.

A West Virginia banking institution may be the victim of a forgery of the private bank's negotiable instruments and a defendant may properly be prosecuted under *W.Va. Code* § 61-4-3 for that forgery. However, *W.Va. Code* § 61-4-3 was intended by the Legislature to prohibit much more than that. It was the Legislature's intent to protect the citizens and businesses of this State by prohibiting the forgery or uttering, or attempt thereof, of any coin, note or bill *current by law or usage in this State*. A defendant indicted for violating *W.Va. Code* § 61-4-3 is not being prosecuted to "protect the purity" of a Federal Reserve note, *Bartkus*, *supra*. Instead, the prosecution is to protect our citizens, our State's businesses, and our local commerce, from fraudulent behavior involving currency and to punish an offender for that fraudulent behavior.

It is clear to this Court that the Legislature intended for the fraud underlying the forgery and uttering of fraudulent United States paper currency to fall within the sphere of conduct prohibited by *W.Va. Code* § 61-4-3. Accordingly, we hold that a "note" as that term is used in *W.Va. Code* § 61-4-3 includes Federal Reserve notes issued by the Federal Reserve System as authorized by 12 U.S.C. § 411. We further hold that a Federal Reserve

11

note issued by the Federal Reserve System is a note of a "banking institution" as that term is used in *W.Va. Code* § 61-4-3.

## B. Possession of Forged Bank Notes

Having addressed the legislative intent of *W.Va. Code* § 61-4-3, we turn to the final issue remaining in this appeal. *West Virginia Code* § 61-4-6 [1923], prohibits, *inter alia*, the possession of forged bank notes "as are mentioned in" *W.Va. Code* § 61-4-3:

> If any person have in his *possession forged bank notes*, or pieces of forged or base coin, *such as are mentioned in [W.Va. Code § 61-4-3]*, knowing the same to be forged or base, with intent to utter or employ the same as true, or to sell, exchange, or deliver them, so as to enable any other person to utter or employ them as true, he shall, if the number of such notes or pieces of coin in his possession, at the same time, . . . be less than ten, he shall be deemed guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than six months nor more than one year and be fined not exceeding five hundred dollars.

*W.Va. Code* § 61-4-6, in part. (Emphasis added.).

Reviewing *W.Va. Code* § 61-4-6, we find the Legislative intent of this statute is also to protect the citizens of this State from being victimized by fraudulent conduct. By enacting *W.Va. Code* § 61-4-6, the Legislature included the knowing *possession* of fraudulent bank notes, coins and bills (when there is the intent to utter) with the types of fraudulent conduct proscribed in its efforts to legislate against counterfeiting. *W.Va. Code* § 61-4-1 to -8.

12

The Legislature specifically refers to *W.Va. Code* § 61-4-3 when discussing the types of fraudulent instruments it intended the statute to cover. A "note" as that term is referenced in *W.Va. Code* § 61-4-3 includes Federal Reserve notes issued by the Federal Reserve System. Accordingly, we hold that a "forged bank note," as that term is used in *W.Va. Code* § 61-4-6 includes Federal Reserve notes issued by the Federal Reserve System as authorized by 12 U.S.C. § 411.

## IV. Conclusion

For the reasons set forth in this Opinion, we find that *West Virginia Code* § 61-4-3 and *W.Va. Code* § 61-4-6 were correctly construed and applied by the trial court and that the evidence supports the jury's finding that the defendant committed the offenses prohibited by these statutes. Accordingly, there is no error in the trial court's denial of the motion for judgment of acquittal, and the defendant's convictions are affirmed.

Affirmed.